Howard **LOHMULLER**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 10–95–308–CR.

Court of Appeals of Texas, Waco.

April 17, 1996.

Rehearing Overruled May 15, 1996.

Howard Lohmuller, Dallas, pro se.

Joe F. Grubbs, County and District Attorney, Lisa L. Maillet, Asst. County & District Attorney, Waxahachie, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

We must decide whether a driver, who has a policy of liability insurance in effect at the time of an accident but allows his driver's license to be suspended after a judgment is rendered against him, is entitled to have a later charge of "driving while license suspended" dismissed when he produces the insurance policy at the criminal trial. We conclude that he is not. We reverse the conviction, however, because the court failed

to charge the jury on the definition of reasonable doubt.

## PROCEDURE

Howard Lohmuller was convicted in a jury trial of driving a motor vehicle while his license to drive was suspended. TEX.REV. CIV.STAT.ANN. art. 6701h, § 32(c)(1)(A) (Vernon Supp.1996). The jury assessed 30 days in jail, which it elected to probate, and a $100 fine. *Id.* § 32(c)(4)(A) & (B). Lohmuller represented himself at trial and does so on appeal. He asserts four points of error: (1) that his right to a speedy trial was violated; (2) that the information was insufficient to charge him with the crime; (3) that he conclusively established a defense to the charge; and (4) that the law is unconstitutional and he was denied due process.

## THE TRIAL

The State's only witness, Highway Patrolman Steve McKinney, testified that he and Trooper Brad Zolinsky encountered Lohmuller on Interstate 35E, about six miles south of Waxahachie, on May 22, 1993. They stopped him because he was not wearing a seat belt. A check of Lohmuller's driver's license revealed that it was under a suspension order.

State's Exhibit 1, a certificate from the Driver Records Bureau of the Driver Licensing and Control Service of the Texas Department of Public Safety, shows that Lohmuller's driver's license was suspended in case number OOJ1372217 because of an unpaid judgment arising out of an accident in Dallas on March 15, 1991. The exhibit includes a certified copy of the order that the Department issued on August 6, 1992 suspending Lohmuller's license pending the (1) filing of evidence that the judgment rendered by the Justice of the Peace in Dallas had been satisfied, (2) filing of proof of financial responsibility for the future, and (3) payment of a reinstatement fee of $50. The order required Lohmuller to surrender his driver's license, registration receipts, and license plates.

McKinney also testified that the Department's records showed that Lohmuller's license was still suspended on the date of the trial, August 23, 1995.

After the State rested its case, Lohmuller made a motion to dismiss based on defects in the information. When the court denied his motion, he initially declined to offer evidence but, after an extended discussion with the court out of the jury's presence, testified on his own behalf. He said that he had a policy of insurance in effect on the date of the 1991 accident in Dallas, that he felt that the other driver's claim was "phony," and that the other driver's insurance company was the plaintiff in the justice-court case that resulted in the judgment against him. He argued that, because he had an insurance policy in effect at the time of the accident, his license could not have been validly suspended. Defendant's Exhibits 1 and 2 show that Lohmuller was the insured in a six-month automobile policy which became effective at 12:01 a.m. on March 15, 1991, issued by Farmers Texas County Mutual Insurance Company.

On cross-examination, Lohmuller admitted that he was driving in Ellis County on May 22, 1993. He would not agree that his license was suspended on that day, and he denied ever having seen the suspension order issued by the Department. He said that he had not driven again since that day.

## SPEEDY TRIAL

Lohmuller first asserts that the trial, held more than two years after he was charged, violated his right to a speedy trial under the Sixth Amendment of the United States Constitution and article 32A.02 of the Code of Criminal Procedure. U.S. CONST. amend. VI; TEX.CODE CRIM.PROC.ANN. art. 32A.02, § 1(3) (Vernon 1989).[1] The information was filed on June 9, 1993. On July 12, 1995, Lohmuller filed a "Motion to Quash or Dismiss," asserting that the State was not ready for trial. The motion was denied.

---

1. Article 32A.02 was declared unconstitutional by the Court of Criminal Appeals in *Meshell v.*

*State,* 739 S.W.2d 246, 257 (Tex.Crim.App.1987).

■ As the State points out, no right to a speedy trial exists by statute. *See Cover v. State,* 913 S.W.2d 611, 620 (Tex.App.—Tyler 1995, pet. ref'd). Further, it says that Lohmuller never asserted a constitutional right to a speedy trial.

■ The right to a speedy trial is subject to a balancing test to determine whether the right has been abridged. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The court should inquire about (1) the length of the delay, (2) reasons for the delay, (3) the circumstances of the defendant's assertion of the right, and (4) any prejudice that resulted from the delay. *Id.* Because Lohmuller did not request that the court make such an inquiry, he has not preserved this claim for our review. We overrule point one.

### THE INFORMATION

Lohmuller next asserts that the information is invalid because (1) "it cannot be established when the information was presented to the court," (2) it was not signed by the county attorney "officially," and (3) it is fundamentally defective because it does not allege that Lohmuller had a statutory duty.

■ Objections to a charging instrument must be made before the date on which a trial on the merits begins. TEX.CODE CRIM. PROC.ANN. art. 1.14(b) (Vernon Supp.1996); *DeDonato v. State,* 819 S.W.2d 164, 167 (Tex. Crim.App.1991). Neither of Lohmuller's two pretrial motions attacked the information on the grounds now asserted on appeal.[2] Lohmuller first called the court's attention to the alleged defects in the information after the State had rested its case-in-chief. Thus, all defects in the charging instrument were waived. *Id.* We overrule point two.

### LIABILITY INSURANCE

Lohmuller's primary assertion, at trial and on appeal, is that he had a policy of insurance in force at the time of the 1991 accident which resulted in his license being suspended and that the existence of that policy is a complete defense to the 1993 charge of driving with a suspended license. Further, he maintains that filing proof of insurance with the Department of Public Safety, as he had done by the time of trial, removed the suspension retroactively, so that the record stands as though the suspension were never issued. Both reasons, he says, are sufficient to justify an acquittal.

Before presenting the charge to the jury, the court, Lohmuller, and the prosecutor discussed whether the presentation of an existing policy to the Department would retroactively lift a suspension. The court observed that Defendant's Exhibit 2 contained a notice from the Department dated August 10, 1995, thirteen days before trial, requesting a letter from the insurance company acknowledging coverage and stating, "Upon receipt of the letter from your insurance company, further consideration will be taken in the above referenced accident case." The court then stated:

> Well, I don't know. If nothing else, I'll make it real clear on the record so that if he wants to appeal, he can do that and an appellate court can tell us he's right, you can even go backwards and say that he should have been unsuspended from day one and therefore if you've got a DWLS during that period of time, you shouldn't have.... I don't know that that's the law or not.

■ Lohmuller simply points to section 1D of article 6701h, the Safety Responsibility Law (the Act), as providing an unambiguous defense to the criminal charge when a liability insurance policy was in force on the day of the occurrence that led to the suspension. TEX.REV.CIV.STAT.ANN. art. 6701h, § 1D (Vernon Supp.1996). Section 1D provides:

> It is a defense to prosecution under this Act if the person charged produces in court an automobile liability insurance policy or a certificate of self-insurance previously issued to that person that was valid at the time that the offense is alleged to have occurred and the charge shall be dismissed.

*Id.*

The State argues that, after a suspension order is issued by the Department, a criminal

---

2. A third pretrial motion, to suppress evidence, was granted.

prosecution for driving while subject to that suspension may be maintained at any time until the suspension is lifted by the Department. In other words, the administrative acts of the Department determine whether a suspension was in effect for purposes of the penal provision making it an offense to drive while a suspension order remains in effect.

The Act covers definitions, administration, security following an accident, proof of financial responsibility for the future, violations of the Act and penalties for those violations, and general provisions. *Id.* §§ 1–43 (Vernon 1977 & Supp.1996). In 1981, the legislature added sections 1A through 1G.[3] Although placed in the existing part of the Act that defines words and phrases, these additional provisions generally strengthened and clarified the requirements for maintaining liability insurance on most vehicles operated within the state, required that evidence of insurance be carried in the vehicles and displayed to a peace officer upon request, and imposed penalties such as suspending driver's licenses and registrations for failing to maintain the required insurance protection. *Id.* The current versions of sections 1A and 1B of article 6701h require that insurance be maintained and that evidence of insurance be carried in each vehicle and displayed upon request. *Id.* §§ 1A, 1B (Vernon Supp.1996). Section 1C imposes specific penalties for failing to do so. *Id.* § 1C. Section 1D, as amended by the Legislature in 1983, provides "a defense to prosecution under th[e] Act." *Id.* § 1D.

Unfortunately, the Act is less than clear about the instances in which section 1D applies. *See id.* If Lohmuller is correct and the Act is read literally, section 1D provides for a defense to any prosecution under the entire Act. We believe, however, that the placement of section 1D and the circumstances under which it was amended demonstrate that it applies only to prosecutions brought under section 1C. Contrasted with the penalties for failing to maintain insurance

as described in section 1C, the offense of and penalties for driving while one's license is suspended are contained in section 32 of the Act. *Id.* § 32. Section 32 covers violations of all suspensions under the Act, no matter how the suspension occurred. *Id.* Section 32(c)(3) provides a defense to a driver who did not receive actual notice of a suspension or revocation order.[4] *Id.* § 32(c)(3).

We are further persuaded that the defense in section 1D does not apply to every prosecution under the entire Act by the fact that the overall scheme of the Act allows one in Lohmuller's position other opportunities to present his defense to a suspension resulting from not having insurance coverage at the time of an accident. He or his insurance company could have defended the "phony" claim in justice court. He could have contested the suspension order before or after it was issued. He could have notified the Department that he held a policy of insurance before being arrested for driving in violation of its suspension order. Instead, he waited until two years had elapsed after being charged and almost until the day of trial to begin the process of notifying the Department that he had a policy of insurance in force on the date of the accident.

For these reasons, we conclude that the legislature did not intend for section 1D to provide a defense to one charged under section 32 of the Act. *Id.* §§ 1D, 32.

■ Lohmuller's second argument under this point—that the suspension had been lifted retroactively when he filed corrective documents with the Department—is refuted by the record. As of the date of trial, the Department had not accepted the filings and had notified him that further action on the part of his insurance company was necessary. Additionally, we note that the Act speaks in terms of "reinstat[ing]" and "restor[ing]" a person's driving privilege. *Id.* §§ 13(c), 16(b) (Vernon 1977). Nowhere in the Act do we

---

3. Act of May 30, 1981, 67th Leg.R.S., ch. 800, 1981 Tex.Gen.Laws 3053, 3053–54 (original versions of sections 1A through 1G have been substantially amended since 1981; current versions of sections 1A through 1G at Tex.Rev.Civ.Stat.Ann. art. 6701h, §§ 1A–1G (Vernon Supp.1996)).

4. Lohmuller testified that he did not receive the notice of suspension. However, the jury was not instructed about notice and apparently resolved the issue against him.

find that the termination of a suspension operates retroactively.

We overrule point two.

## CONSTITUTIONALITY

■ Lohmuller's driver's license and registration were originally suspended on August 6, 1992 under section 13(a) of the Act. In his final point, Lohmuller asserts that section 13 is unconstitutional because (1) it "appears to be an ex post facto law which is prohibited by Article I section 9c to the federal government and section 10a to the states" and (2) the suspension took place without a prior hearing or a post-suspension hearing. Section 13 is ex post facto, he says, "because I had a defense to the alleged judgment against me, that defense being that the plaintiff submitted a false insurance claim, as there was no damage done." He says that the denial of a hearing deprived him of "a fair chance to tell his side of the story prior to or shortly after the declaration by the state that his license was suspended."

■ Lohmuller's reliance on the ex post facto provision is misplaced. An ex post facto law is one that (1) criminalizes formerly innocent acts done before the law is passed, (2) aggravates a crime or makes it greater than when committed, (3) increases the punishment after the act was committed, or (4) alters legal rules so that less or different evidence is required to convict than was required at the time of commission. *Hill v. State*, 146 Tex.Crim. 333, 171 S.W.2d 880, 883, *cert. denied*, 320 U.S. 806, 64 S.Ct. 72, 88 L.Ed. 487 (1943). He does not assert that the Safety Responsibility Law does any of those; rather, he relies on the fact that he had a defense to the 1991 justice-court action.

With respect to Lohmuller's second approach to the constitutionality of the statute, we note that the Department's suspension order was based on a judgment of a court. Because a justice-court judgment is entitled to a presumption of regularity, we must presume that Lohmuller had notice of that proceeding. The suspension by the Department is automatic when it is presented with a judgment of a court of competent jurisdiction that establishes liability arising out of a motor vehicle accident. Tex.Rev.Civ.Stat.Ann. art. 6701h, § 13(a) (Vernon 1977).

## REASONABLE DOUBT

■ In reviewing the court's charge, we find that the court did not include the required definition of "reasonable doubt." *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim. App.1991). We have previously held that the right to the definitional instruction on reasonable doubt is an absolute right which we must implement without the procedural formality of a point of error. *See Kieschnick v. State*, 911 S.W.2d 156, 163 (Tex.App.—Waco 1995, no pet.) (on rehearing). Thus, we hold that the court erred when it failed to include the mandatory definitional instruction on reasonable doubt in the charge given to the jury. *Id.* Because the error is not subject to a harm analysis, we must reverse the judgment. *Id.*

## CONCLUSION

Although no error occurred at trial other than the failure to charge the jury on the definition of reasonable doubt, we reverse the judgment and remand for a new trial.

We note that Lohmuller's brief requested a "writ of mandamus" to "order the Texas Department of Public Safety to terminate the suspension of appellant's expired driver's license." However, before submission, he filed a motion to withdraw this request, saying that the Department has terminated its suspension. The motion to withdraw is granted.