**Leonard Ray HALL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00014–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 19, 1996.

Decided Dec. 6, 1996.

Discretionary Review Refused April 9, 1997.

Ebb B. Mobley, Longview, for appellant.

Angela J. Norton, Assistant District Attorney, Gilmer, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

CORNELIUS, Chief Justice.

Leonard Ray Hall was convicted of aggravated robbery. After a jury found him guilty, Hall elected to have the trial court

assess punishment. The court set Hall's punishment at sixteen years' confinement and entered an affirmative finding in the judgment that Hall exhibited a deadly weapon while committing the offense.

On appeal Hall contends that his conviction should be reversed because the trial court failed to instruct the jury on accomplice witness testimony. He also contends that the trial court's deadly weapon finding should be deleted from the judgment because the court was without authority to make such a finding. Hall asserts that since the jury charge included instructions on the law of parties, only the jury was authorized to make an affirmative finding that Hall exhibited a deadly weapon. We reject these contentions and affirm.

Leonard Ray Hall was one of eight participants charged in an aggravated robbery committed at the residence of Wayne James in the early morning hours of July 22, 1995. The other participants were identified as Jason McDonald, Cara Cardinal, Jeffrey Collier, Sondra Cooper, James Garriott, Michael Reeser, and Roger Reneau Smith. The Jameses were out of town, but their son, Jason James, and a friend, Jake Schmidt, were in the house when the crime occurred.

Jason James had contacted Jason McDonald earlier that night asking to purchase $30.00 worth of LSD.[1] McDonald arrived at the house shortly thereafter with three other people. James knew McDonald and Jeffrey Collier, but did not know the two females in the group. James went into a back bedroom with McDonald and the two women. James paid one of the women $30.00, and she stated they would be back with the LSD.

Approximately twenty minutes later, the group returned to the house. James, Schmidt, and one of the girls went to the back bedroom and completed the transaction. When James came out of the bedroom, someone grabbed him from behind and put a gun to his head. Collier entered the rear bedroom and held a gun to Schmidt's head, telling him to lie on the floor. James and Schmidt were then moved to the bathroom, ordered to lie down, and tied up with neckties. James was also struck in the back with a gun butt while on the floor. James and Schmidt identified Hall as one of their assailants.

The house was ransacked, and some $15,-000.00 worth of property was stolen, including cash, jewelry, rare coins, a Chevrolet Beretta, and a Honda motorcycle. Hall told James and Schmidt that if they reported the crime to police, he would come after them. James and Schmidt escaped by crawling out a bedroom window after Hall and the others left. They reported the crime to police. James and Schmidt admitted during their testimony that they initially lied to police about what transpired before and immediately after the robbery because neither wanted the police, or their parents, to discover their drug use.

Hall first contends that the trial court erred when it failed to properly charge the jury on accomplice witness testimony. A defendant cannot be convicted on the basis of accomplice testimony unless the testimony is corroborated by other evidence tending to connect the defendant with the crime. TEX. CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979).

In judging a complaint of this kind, we follow a two-step analysis. First, we determine whether error occurred. If so, we then decide whether the resulting harm requires reversal. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996); *Solis v. State*, 792 S.W.2d 95 (Tex.Crim.App.1990). If the defendant fails to object to the jury charge at trial, he must show that he suffered egregious harm to secure a reversal on appeal. TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981); *Hutch v. State, supra* at 170–71; *Solis v. State, supra* at 98; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Hall neither objected nor submitted a special requested charge. TEX.CODE CRIM. PROC.ANN. art. 36.14 (Vernon Supp.1997), art. 36.15 (Vernon Supp.1997). Thus, he must

---

**1.** LSD is the commonly used name for lysergic acid diethylamide and refers to a class of drugs derived from lysergic acid amides, including its salts, isomers, and salts of isomers. It is a Penalty Group 3 drug. TEX.HEALTH & SAFETY CODE ANN. § 481.104 (Vernon 1992).

show that he suffered egregious harm to prevail on appeal.

■ Egregious harm consists of errors affecting the very basis of the case, or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App. 1991); *Almanza v. State, supra* at 172.

Cara Cardinal, Jason McDonald, and James Melvin Garriott were called as witnesses by the State. All three, like Hall, were charged with aggravated robbery. Cardinal invoked her Fifth Amendment right against self-incrimination and refused to testify. McDonald and Garriott testified to events occurring before, during, and after the robbery.

■ An accomplice is a person who participated with someone else before, during, or after the commission of a crime. *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App. 1986), *cert. denied,* 492 U.S. 937, 110 S.Ct. 21, 106 L.Ed.2d 634 (1989). If the person cannot be prosecuted for the offense with which the accused is charged, as a matter of law, he is not an accomplice. *Kunkle v. State, supra* at 439.

■ Cardinal, McDonald, and Garriott are accomplice witnesses as a matter of law. They were active participants in the crime and were, like Hall, charged with aggravated robbery. The trial court is required to instruct the jury that accomplice testimony, to be sufficient for a conviction, must be corroborated by other evidence tending to connect the defendant to the crime. *Arney v. State,* 580 S.W.2d 836, 839 (Tex.Crim.App. [Panel Op.] 1979). The court did not do so here, and its failure to do so was error. This only begins the inquiry, however. *Almanza v. State, supra* at 174.

■ Hall must also show that he suffered egregious harm. Egregious harm is difficult to prove and must be examined on a case-by-case basis. *Hutch v. State, supra* at 171. When deciding whether an error constitutes egregious harm, the reviewing court may consider any relevant information revealed by the trial record. *Hutch v. State, supra* at 171; *Almanza v. State, supra* at 171.

■ Where the evidence independent of the accomplice testimony warrants the conviction, the court's failure to instruct on the law of accomplice testimony is not reversible error. *Solis v. State, supra* at 98. If the nonaccomplice evidence fails to connect the defendant to the offense, however, the evidence is insufficient to support the conviction, and an acquittal must be ordered. *Munoz v. State,* 853 S.W.2d 558, 560 (Tex.Crim. App.1993).

Hall contends that the three accomplice witnesses' testimony was crucial to the jury's guilty verdict and that any credible evidence, apart from that testimony, tending to connect Hall with the charged offense either does not exist or is exceedingly weak. We disagree.

The victims of this crime, Jason James and Jake Schmidt, admitted that they initially lied to investigating officers about the circumstances preceding and immediately following the aggravated robbery because they did not want police, or their parents, to know that they smoked marihuana that night or that they were attempting to buy LSD from two of the individuals charged in the crime.

These admissions raise questions about Schmidt's and James's credibility. However, the jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Lafoon v. State,* 543 S.W.2d 617, 620 (Tex.Crim.App.1976). Schmidt's and James's testimony as to Hall's role during the aggravated robbery is clear, compelling, and consistent.

Schmidt and James testified that Hall threatened them with a gun, stood guard over them while they were lying on the bathroom floor, and asked Jason James whether he had any "money or guns or stuff." Both identified Hall as the person committing these acts. James also testified that Hall grabbed him from behind and put a gun to his head, forcing him into the bathroom. Schmidt testified that Hall threatened to shoot them if they "went to the cops." Moreover, Schmidt's and James's testimony does not stand alone. Evidence tending to

connect Hall with the offense is found elsewhere in the record in the form of testimony from Wayne James, Joe Wilkerson, Mindy Garriott, and Deputy Sheriff Anthony Betterton.

Joe Wilkerson testified that he saw Hall carrying a .38 caliber pistol mere hours before the crime was committed. Wilkerson also testified that approximately one week after Hall was arrested, he talked with Hall about another gun that Michael Johnson had left with Wilkerson's stepson. Wilkerson described the gun as a .38 Smith & Wesson police special that was scratched up with the handles broken off.

Wilkerson testified Hall told him that the gun had been taken from the Jameses' residence by one of the other defendants and had been damaged when it was thrown on the driveway and run over by a police car when he and the others were arrested. Wayne James testified that a .38 Smith & Wesson revolver with a five-inch barrel and brown handles was among the property taken from the residence during the robbery. This gun matches Wayne James's description.

Wilkerson also testified Hall told him that he did not think he would be in trouble for anything other than stealing a car during the robbery. Wayne James testified that a 1989 Chevrolet Beretta was among the property stolen from the Jameses' residence during the robbery. Hall also told Wilkerson that "one of the other boys had done the beating of the two boys that was there."

Mindy Garriott's testimony provides additional evidence tending to connect Hall to the aggravated robbery. Hall asserts that Garriott's status as an accomplice witness should have been submitted as a matter of fact to the jury. We disagree.

 A witness is not an accomplice witness merely because he or she knew of the offense or even concealed it. *Kunkle v. State, supra* at 439. There must be evidence of an affirmative act on the witness' part assisting in the commission of the crime. Merely knowing that the offense took place and not reporting it is not enough to make Garriott an accomplice witness. There is

simply no evidence that Garriott engaged in an affirmative act. As a matter of law, Garriott is not an accomplice. Her testimony can properly be considered for corroborative purposes.

Garriott testified that Roger Reneau, James Garriott, Michael Reeser, Cara Cardinal, and Sondra Cooper arrived at her house shortly after 1:30 a.m., Saturday, July 22, 1995, in a blue Ford, a maroon Beretta, and a motorcycle. At first, she testified that Hall was not among the group. She later testified that Hall arrived with the rest of the group and was driving the Beretta.

Garriott testified that the group unloaded property from the vehicles and put it in her house and a camper located on the property. Some of the property was placed on her bed. She testified she asked Hall where it came from, and he told her he would get rid of it. Hall removed the property from her bed and put it in the camper. Garriott testified that Hall drove off in the Beretta and it was her understanding he was going to drop the vehicle in a creek.

Garriott also related a conversation she had with Hall the day before she testified. Hall told her he was trying to figure out what everyone was going to say and that he did not want Garriott placing him at her house. Hall told her that if she did, "he might do time but when he got back it would be better for her if she didn't do that." This conversation was the reason she originally testified that Hall did not arrive with the rest of the group.

Deputy Sheriff Anthony Betterton testified that some of the property stolen from the Jameses' residence was recovered from the Garriott residence and a camper located on the property. The stolen 1989 Chevrolet Beretta was recovered from the waters of Big Sandy Creek. This is consistent with Garriott's testimony.

Schmidt's and James's testimony as to Hall's actions during the robbery and their identification of Hall as their assailant stands unimpeached. Hall's statement to Wilkerson connects him to the stolen 1989 Chevrolet Beretta. Garriott testified that Hall was driving the same Beretta when he arrived at

her house. She also testified that Hall helped dispose of the stolen property. She testified that the last time she saw Hall, he was driving the Beretta away from the Garriott residence. Finally, Hall's statements to Wilkerson, explaining the damage to the stolen .38 Smith & Wesson and that the boys were beaten during the crime, tend to connect Hall to specific details of the crime that only an actual participant would know.

There is sufficient direct testimony from the victim to support Hall's conviction, without considering the accomplice testimony. Additionally, there is sufficient corroborating testimony. In these circumstances, the trial court's failure to instruct the jury on the law of accomplice witness testimony is not reversible error.

Hall next asserts that, contrary to *Solis v. State,* 792 S.W.2d 95, no harm analysis is required to find reversible error. *Solis* holds that where the evidence clearly shows a witness is an accomplice witness as a matter of law, the trial court must so instruct the jury, but that if the appellant fails to object to the omission of the instruction, as in this action, he must prove egregious harm to prevail on appeal. TEX.R.APP.P. 52(a); *Solis v. State, supra* at 98.

Hall invites this court to re-examine *Solis* in light of *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993). In *Marin,* the Texas Court of Criminal Appeals was asked to decide whether the trial court's failure to allow appointed counsel ten days of trial preparation, as allowed by Article 1.051(e) of the Texas Code of Criminal Procedure, could be raised for the first time on appeal and, if so, whether such error was subject to harm analysis under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Marin v. State, supra* at 277. The court decided the issue could be raised for the first time on appeal and was not subject to harm analysis.

█ In reaching its decision, the Texas Court of Criminal Appeals recognized that a defendant's rights arise from rules falling into one of three categories: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented only on request. *Marin v. State, supra* at 279.

█ The loss of a claim or right for failure to object is a procedural default. TEX. R.APP.P. 52(a); *Marin v. State, supra.* Procedural defaults apply only to the last category of rights. Rights based on absolute system requirements or considered waivable only are not subject to procedural default because, by definition, they are not forfeitable. Determining which category a right occupies usually settles the question of whether a particular right is subject to procedural default.

Hall contends that his right to a proper jury instruction on accomplice witness testimony is either an absolute system requirement or a right that must be expressly waived. He contends that *Kieschnick v. State,* 911 S.W.2d 156 (Tex.App.—Waco 1995, no pet.) (opinion on rehearing), supports his position. *Kieschnick* involved a jury charge that failed to define reasonable doubt. Kieschnick, like Hall, failed to object to the improper charge. The court noted that in *Geesa v. State* the Texas Court of Criminal Appeals expressly adopted a specific jury charge on reasonable doubt stating, "this instruction shall be submitted to the jury in all criminal cases, even in the absence of an objection or request by the State or the defendant, whether the evidence be circumstantial or direct." *Kieschnick v. State,* 911 S.W.2d at 162 (quoting *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991)).

In *Kieschnick,* the court analyzed the jury charge error by looking at *Geesa's* instructions on reasonable doubt and *Marin's* categories of rights and concluded that the Texas Court of Criminal Appeals intended to create an absolute systemic requirement that every criminal charge contain the definitional instruction on reasonable doubt. *Kieschnick v. State, supra* at 162. Since the defendant's right to the proper *Geesa* instruction was absolute, it could not be procedurally defaulted by failing to object and was not subject to a harm analysis.[2]

2. The Waco Court of Appeals has adopted this standard in two other cases. *See Lohmuller v.*

The Texas Court of Criminal Appeals has recently expressly endorsed the court's reasoning in *Kieschnick v. State* regarding proper jury instructions on reasonable doubt. *Reyes v. State,* 938 S.W.2d 718 (Tex.Crim. App.1996). This case, however, differs significantly from *Reyes* and *Kieschnick.* The charge error in *Kieschnick* affected the very framework of the trial process. *Cool v. United States,* 409 U.S. 100, 101–04, 93 S.Ct. 354, 355–57, 34 L.Ed.2d 335, 338–39 (1972); *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970); *Reyes v. State,* 938 S.W.2d at 720; *Rey v. State,* 897 S.W.2d 333, 344–45 (Tex.Crim.App.1995). It was a type of error that defies analysis by harmless-error standards. *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302, 331 (1991); *Rey v. State, supra* at 344.

In *Kieschnick,* the charge error deprived the defendant of the protection of a definition of reasonable doubt. *See In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375; *Geesa v. State, supra* at 161. Without this basic protection, a criminal trial cannot reliably serve its function as a vehicle for determining guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. *Arizona v. Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331; *Reyes v. State,* 938 S.W.2d at 721 n. 7; *Marin v. State, supra* at 278; *Rey v. State, supra* at 345.

*Marin v. State* limits application of Rule 81(b)(2) to trial errors where the record provides concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error. *Marin* applies to errors which defy an empirical examination of the record.

The charge error in this case does not defy empirical examination. *Solis* is entirely consistent with *Marin* in this regard. *Solis* requires the appellate court to examine the record for corroborating evidence of the accomplice witness testimony. If the evidence clearly warrants conviction independent of the accomplice testimony, the court's failure to instruct on the law of accomplice testimony is not reversible error. *Solis v. State, supra* at 98.

In *Kieschnick,* the court correctly characterized the defendant's right to a jury charge on reasonable doubt as an absolute right. *Reyes v. State,* 938 S.W.2d at 720; *Marin v. State, supra* at 279; *Kieschnick v. State, supra* at 163. *Geesa* requires the court in all criminal cases to instruct the jury on the definition of reasonable doubt *even in the absence of an objection or request by the State or defendant, whether the evidence be circumstantial or direct. Geesa v. State, supra* at 162. This type of mandatory language is not found in jury charge instructions on accomplice witness testimony enunciated in *Solis.*

*Solis* admittedly requires that "where the evidence clearly shows a witness is an accomplice witness as a matter of law, *the trial court must so instruct the jury,*" but this language merely establishes the standard for deciding error. *Solis v. State, supra* at 97 (emphasis added). Unlike the mandatory language in *Geesa,* it does not create an absolute right to the proper jury charge on accomplice witness testimony, nor does it foreclose consideration of the defendant's lack of an objection at trial. *Solis* specifically allows the reviewing court to consider whether an objection to the improper jury charge was raised at trial. Hall's right to a proper jury charge on accomplice testimony can only be implemented on the defendant's request. It is a right that arises from *Marin's* third category of rights. *Reyes v. State,* 938 S.W.2d at 720; *Marin v. State, supra* at 279. As such, it is subject to procedural default rules.

▆▆▆ Hall next contends that the trial court erred when it entered in the judgment an affirmative finding that Hall exhibited a deadly weapon during the charged offense.

*State,* 921 S.W.2d 457, 462 (Tex.App.—Waco 1996, no pet.) (no harm analysis required where jury charge lacked required definitional instruction on reasonable doubt); *Coleman v. State,* 915 S.W.2d 80, 87 (Tex.App.—Waco 1996, pet. granted) (no harm analysis required where trial court erred in quashing issued subpoenas since the error denied Coleman's right to compulsory process).

Hall contends that when the court's charge permits the jury to convict the defendant as either a principal or a party, the jury, not the trial court, is required to make the finding that the defendant exhibited a deadly weapon. We disagree.

Hall concedes that this issue is controlled by *Flores v. State,* 690 S.W.2d 281 (Tex.Crim. App.1985). In *Flores,* the trial court charged the jury on the offense of murder, with the defendant acting as either a principal or a party. The jury found the defendant guilty of murder "as charged in the indictment." The defendant chose to have the court decide punishment. The trial court set punishment at life imprisonment and made an affirmative finding that a deadly weapon was used in the offense.

The Texas Court of Criminal Appeals held that the trial court's affirmative finding was procedurally correct since the trial court was the trier of facts at the punishment stage. But since the law of parties was involved, the affirmative finding must also show that *the appellant* used or exhibited the deadly weapon; otherwise it is impossible to determine which theory the jury used to convict. The trial court's affirmative finding did not specify that the appellant personally used or exhibited a deadly weapon. The judgment was reformed solely for this reason.

The facts here are directly on point with the procedure approved by *Flores.* The trial court was the trier of fact during the punishment stage. And in this case, the affirmative finding clearly states, "said Defendant used or exhibited ... a deadly weapon." The language of the trial court's affirmative finding corresponds to the requirements of *Flores* and is proper.

The cases relied on by Hall are inapposite and actually support the propriety of a trial court's entry of an affirmative finding when it is the trier of fact at the punishment stage of the proceedings. *See Davis v. State,* 897 S.W.2d 791 (Tex.Crim.App.1995); *Polk v. State,* 693 S.W.2d 391 (Tex.Crim.App.1985); and *Broden v. State,* 923 S.W.2d 183 (Tex. App.—Amarillo 1996, no pet.).

Finally, the trial court's affirmative finding is consistent with TEX.CODE CRIM.PROC.ANN.

art. 42.12, § 3g(a)(2) (Vernon Supp.1997). The fact finder is required to make an affirmative finding that the "defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2). The trial court was the fact finder during Hall's punishment stage and the affirmative finding clearly states, "said Defendant used or exhibited ... a deadly weapon." As Hall correctly notes, this section "simply codifies the case law previously discussed." The trial court's actions were proper and followed the procedures required by *Flores* and its progeny.

For the reasons stated, the judgment is affirmed.