NUMBERS 13-04-482-CR


 13-04-483-CR

 13-04-484-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


FREDERICK PATTERSON, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 24th District Court of Jackson County, Texas.


 


DISSENTING OPINION ON REHEARING 



Before the Court En Banc


Dissenting Opinion on Rehearing by Justice Yañez


 

 In his second issue, appellant contends his trial counsel was ineffective for failing 
to request either an accomplice witness or confidential informant instruction in the jury
charge. Appellant's counsel did not object to the charge, which contained neither
instruction. Although the majority concludes that counsel's failure to object to the charge
was a "glaring error," it holds appellant cannot show he was prejudiced by the error
because there was ample corroboration by other evidence. I would hold that the
accomplice witness and confidential informant testimony was essential to the State's case,
and in light of the remaining evidence, there is a reasonable probability that if the jury had
been informed it could not convict appellant without corroboration of the accomplice
witness and confidential informant testimony, the result of the proceeding would have been
different. Accordingly, I would hold that counsel's failure to request an instruction on the
law of accomplice witness testimony and confidential informant testimony deprived
appellant of effective assistance of counsel. I respectfully dissent. 

Standard of Review and Applicable Law


 To establish ineffective assistance of counsel, a defendant must show by a
preponderance of the evidence that he was prejudiced by his counsel's deficient
performance. (1) Counsel's performance is deficient when his representation falls below the
objective standard of professional norms. (2) However, our "review of defense counsel's
representation is highly deferential and presumes that counsel's actions fell within the wide
range of reasonable and professional assistance." (3) 

 To show prejudice, "appellant must show a reasonable probability that, but for his
counsel's unprofessional errors, the result of the proceeding would have been different. 
A reasonable probability is a probability sufficient to undermine confidence in the
outcome." (4) "In other words, the appellant must prove counsel's representation so
undermined the proper functioning of the adversarial process that the trial cannot be relied
on as having produced a just result." (5)

 When ineffective assistance is raised on direct appeal, appellate counsel and the
court must proceed on a trial record not developed for the object of litigating or preserving
the claim, and thus it is often incomplete or inadequate for this purpose. (6) However, some
claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so
apparent from the record." (7) 

 If a prosecution witness is an accomplice as a matter of law (or a confidential
informant), the trial court is under a duty to instruct the jury accordingly and failure to do
so is error. (8) Accordingly, the failure of counsel to request an accomplice witness
instruction or a confidential informant instruction when facts warrant such instructions
constitutes deficient performance. (9)

 If an appellant fails to object to the omission of an accomplice witness or confidential
informant instruction, as in the present case, he or she must prove egregious harm to
prevail on appeal. (10) Egregious harm results from errors that deny the defendant a "fair and
impartial trial," "go to the very basis of the case," deprive the defendant of a "valuable
right," or "vitally affect his defensive theory." (11) "Egregious harm is a difficult standard to
prove and such a determination must be done on a case-by-case basis." (12) In reviewing the
trial court's failure to instruct the jury on the accomplice witness rule, we examine the
record for evidence corroborating the accomplice witness testimony. (13) If the evidence
"clearly warrants conviction independent of the accomplice testimony, the court's failure
to instruct on the law of accomplice testimony is not reversible error." (14) 

 The court of criminal appeals has stated that an accomplice witness instruction is
given to inform the jury that it cannot use the accomplice witness testimony unless there
is also some non-accomplice evidence connecting the defendant to the offense. (15)
Non-accomplice evidence can render harmless a failure to submit an accomplice witness
instruction by fulfilling the purpose an accomplice witness instruction is designed to serve. (16)
A harmless error analysis for the omission of an accomplice witness instruction should be
flexible, taking into account the existence and strength of any non-accomplice testimony
and the applicable standard of harm. (17) Under the egregious harm standard, the omission
of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for
conviction clearly and significantly less persuasive." (18) 

 To determine the sufficiency of the corroboration, regardless of whether an objection
was made, we eliminate the testimony of the accomplice witness and examine the
testimony of the other witnesses. (19) In determining the strength of the particular item of
non-accomplice evidence, we must examine (1) its reliability or believability, and (2) the
strength of its tendency to connect the defendant to the crime. (20)

Analysis


 I agree with the majority that in determining whether there is "other evidence"
tending to connect an accused with the offense under article 38.14, (21) the "other evidence"
used to corroborate accomplice witness testimony cannot include uncorroborated
confidential informant testimony. Uncorroborated confidential informant testimony is not
"evidence" (unless independently corroborated), and thus, cannot constitute "other
evidence" under the accomplice witness statute. Similarly, uncorroborated accomplice
witness testimony is not "evidence" (unless independently corroborated), and thus, cannot
constitute "other evidence" under the confidential informant statute. (22)

 However, I disagree with the majority's conclusion that the independent evidence
(non-accomplice, non-confidential informant testimony) "tends to connect" appellant to the
offense. 

 To determine the sufficiency of the corroboration, I first eliminate the testimony of
the accomplice witnesses (Acie Jones, Jesse D. Chase, and Lisa Robinson) to determine
"whether the other inculpatory facts and circumstances in evidence tend to connect
appellant to the offense." (23)

 Here, the independent evidence consists of (1) the testimony of Officer Curt
Gabrysch of the Jackson County Sheriff's Department, (2) the testimony of Officer Craig
Repka of the Edna Police Department, and (3) audio recordings (and transcripts) of alleged
drug transactions between the confidential informant, Santos Castro Castaneda ("Santos")
and the accomplices, Jones (on June 13, 2002), Chase (on August 2, 2002), and Robinson
(on August 2, 2002), respectively. 

 Officer Gabrysch testified that he and Officer Repka supplied Santos with money
to purchase crack cocaine from known drug dealers. A "body wire" was placed in Santos's
purse to record her conversations with drug dealers and enable the officers to listen to the
conversations from a mobile unmarked car. Officer Gabrysch testified that prior to each
of the transactions, Santos was searched to ensure that she did not possess drugs and
that after each transaction, she returned with crack cocaine. Officer Gabrysch testified that
(1) neither he nor Officer Repka saw appellant deliver drugs to anyone, (2) he did not see
Santos at appellant's house, (3) he did not see any contact between Acie Jones and
appellant, (4) he did not see any contact between Santos and appellant, and (5) he did not
see appellant's house and did not know how many persons may have been inside. Officer
Gabrysch testified that he, Officer Repka, and Santos assisted in preparing the transcript
of the audiotapes. Significantly, Officer Gabrysch did not specifically testify that he was
able to independently identify appellant's voice on the audiotape. With regard to
appellant's voice on the tape, Officer Gabrysch testified as follows:

[Appellant's counsel]: All right. And one thing you did in here would you
agree with me, Officer, that on this tape that's been introduced, on the tape
do you ever hear the voice of Frederick Patterson, yes or no?


[Officer Gabrysch]; Yes.


[Counsel]: On June 13 you hear the voice of Frederick Patterson on the
tape?


[Officer Gabrysch]: Yes.


[Counsel]: Okay. Do you recall what if anything he says?


[Officer Gabrysch]: I don't recall without looking at the transcript.


[Counsel]: Let's assume that's correct. Okay? And we'll assume it's correct
that you heard his voice on there. When you heard his voice on there would
you agree with me there's nothing that he said or you heard him say on that
tape that would implicate him in any kind of narcotics transaction. Is that a
fair statement?


[Officer Gabrysch]: No. It's not.


[Counsel]: Okay. So something he said would implicate him. Not the fact
that you heard his voice but something that he said would implicate that he
was involved in the narcotics transaction. That's your take?


[Officer Gabrysch]: In my opinion, yes.


. . . . 


[Prosecutor]: You were asked a question if-- isn't it true that nothing that was
said on the tape by Rick Patterson would implicate him in any drug
transaction. Do you recall that particular question?"


[Officer Gabrysch]: Yes, I do.


[Prosecutor]: Is there not something that he says on that tape, he being Rick
Patterson, that does implicate him in this drug transaction?


[Officer Gabrysch]: In my opinion, yes.


[Prosecutor]: Tell us what it is that he says on that tape that implicates him
in this drug transaction?


[Officer Gabrysch]: Asked him to hook her [Santos] up with a tight fifty which
is $50 worth of crack cocaine and in response said, do you see that white
boy over there on the corner on that bike. 


There are no other references in Officer Gabrysch's testimony regarding appellant's voice
on the audiotape.

 Officer Repka testified that as a confidential informant, Santos was paid a total of
approximately $3,000 for her work as an informant, or approximately $100 per arrest. He
also testified that he (1) did not see Santos's car parked near appellant's house, and (2)
did not see appellant deliver drugs to anyone. Officer Repka's testimony does not include 
any identification of appellant's voice on the audiotape. 

 Except for Santos (the confidential informant), the three accomplice witnesses, and
the two officers, the only other witness was appellant. Appellant testified he had never
been involved with the delivery of drugs. With regard to the "white boy on the corner"
statement, appellant testified he did not know whether he made the statement. 

 Although Santos's testimony may not be considered as "other evidence" unless it
is independently corroborated, she testified that with regard to each of the transactions,
she waited outside of appellant's house while each accomplice witness went into the house
and returned with cocaine. Santos testified that she did not see appellant give drugs to any
of the accomplices and did not see any of the accomplices give appellant money in return. 
Santos testified that she spoke to appellant twice. She testified that before the transaction
involving Acie Jones, she spotted appellant in his vehicle, rolled the window down, and
asked him "if he had a fifty." Santos testified that appellant responded, "did we spot the
white man on the corner on the bike." Santos also testified that during the third
transaction, when Robinson walked out of appellant's house with the drugs, appellant
walked out a bit behind her. According to Santos, when she drove off, she said, "Bye,
Rick." However, the transcript of the audiotape reflects that the "Bye, Rick" comment
appears in the context of comments Santos made for the benefit of the officers: "Bye Lisa. 
O.K. I got it. Bye Rick, O.K. ya'll, I'm taking a left on taking a right on Roosevelt. . . ." 

 Eliminating Santos's testimony, each of the accomplice witnesses testified that they
went into appellant's house and purchased cocaine from him. 

 I conclude that the non-accomplice non-informant testimony tending to connect
appellant to the offense is reliable, but very weak. (24) Excluding the accomplice and
informant testimony, the evidence shows only that on three occasions, while being
monitored by the officers at a distance, Santos drove to a location she identified as
appellant's residence, and purchased cocaine from each of the three accomplices. 
Although appellant testified at trial and the jury therefore had an opportunity to determine
whether his voice was on the audiotape, the single brief comment attributed to appellant
on the audiotape was ambiguous. Although the audiotapes contain references to "Rick,"
there are no references to "Rick Patterson." The officers could not even verify that Santos
was at or near appellant's house. I conclude that without the testimony of Santos and the
accomplice witnesses, the officers' testimony and the audiotapes are insufficient to tend
to connect appellant to the offense. (25)

 Here, because the jury was given neither an accomplice witness instruction nor a
confidential informant instruction, it was authorized to convict appellant with no
corroborating evidence. The State's case relied overwhelmingly on the testimony of
Santos and the accomplice witnesses. Accordingly, the jury instruction was critical to the
outcome of the case. (26) The combination of the omission of the proper accomplice witness
and confidential informant instructions and extremely weak corroborating evidence may
result in a significantly less persuasive case for conviction. (27) Considering the weak nature
of the non-accomplice non-confidential-informant testimony, I believe that rational jurors
certainly could have found the State's case significantly less persuasive had they been
properly instructed. (28) I conclude that in light of the facts of this case, failure to give the jury
instruction on accomplice witness or confidential informant corroboration amounted to
egregious harm. (29) 

Conclusion


 Because the jury was authorized to convict appellant without any corroborating
evidence, I would find that counsel's failure to object to the charge or to request accomplice
witness and confidential informant instructions so undermined the trial process that the trial
cannot be relied upon as having produced a just result. (30) Accordingly, I would find there
is a reasonable probability that, but for counsel's deficient performance, the result of the
trial would have been different. (31) I would therefore sustain appellant's second issue,
reverse the trial court's judgment, and remand to the trial court for a new trial. (32)


 

 LINDA REYNA YAÑEZ,

 Justice




Publish. Tex. R. App. P. 47.2(b).


Dissenting opinion delivered and filed 

this the 26th day of October, 2006.

1. Ex parte Nailor, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004) (citing Strickland v. Washington, 466
U.S. 668, 687 (1984)). 
2. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 
3. Id. 
4. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).
5. Hall v. State, 161 S.W.3d 142, 152 (Tex. App.-Texarkana 2005, pet. ref'd) (citing Strickland, 466
U.S. at 686).
6. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). 
7. Id. at 507 (citing Massaro v. United States, 538 U.S. 500, 508 (2003)). 
8. Herron v. State, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). In applying the confidential informant
statute, see Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005), courts have adopted the standards for
corroboration of accomplice-witness testimony. See Jeffery v. State, 169 S.W.3d 439, 447 (Tex.
App.-Texarkana 2005, pet. ref'd). 
9. Henson v. State, 915 S.W.2d 186, 197 (Tex. App.-Corpus Christi 1996, no pet.) (citing Ex parte
Zepeda, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991)).
10. Hall, 161 S.W.3d at 149 (citing Solis v. State, 792 S.W.2d 95, 97-98 (Tex. Crim. App. 1990)). 
11. Id. (citing Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984) (op. on reh'g)).
12. Id. (citing Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); Batiste v. State, 73 S.W.3d
402, 407 (Tex. App.--Dallas 2002, no pet.)). 
13. Id. 
14. Id. (quoting Hall v. State, 937 S.W.2d 580, 586 (Tex. App.-Texarkana 1996, pet. ref'd)).
15. Id. (citing Herron, 86 S.W.3d at 632).
16. Id. 
17. Id. at 149-50.
18. Id. at 150 (quoting Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). 
19. Id. 
20. Id. 
21. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).
22. See id. art. 38.141(a).
23. McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997).
24. See Herron, 86 S.W.3d at 632 (noting non-accomplice testimony must be evaluated for reliability
and strength of tendency to connect appellant to the offense).
25. See Young v. State, 95 S.W.3d 448, 451-52 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) (holding 
corroborating evidence was insufficient where officers could not verify that confidential informant went to
appellant's house for cocaine transaction and the only identification of appellant's voice on audiotape
recording of the transaction was provided by the confidential informant); cf. Dennis v. State, 151 S.W.3d 745, 
749 (Tex. App.-Amarillo 2004, pet. ref'd) (holding corroborating evidence sufficient, even though the
investigator did not actually see the transaction because the informant was searched prior to the meeting and
wore a recording device that was monitored by the investigator, the investigator identified appellant's voice
on the recording, the informant was observed going to appellant's house, appellant was seen approaching
the informant's car, and the informant gave the officer cocaine on his return from the transaction); Jefferson
v. State, 99 S.W.3d 790, 792-93 (Tex. App.-Eastland 2003, pet. ref'd) (holding corroborating evidence
sufficient, even though the informant went by herself to a house to make a purchase, because she had been
searched before she left, the officer watched her go into the house, a recording was made of the transaction,
the officer testified that appellant's voice was on the recording, and the informant gave the officer cocaine
when she returned to his vehicle). 
26. See Hall, 161 S.W.3d at 151.
27. See Saunders, 817 S.W.2d at 693. 
28. See id.; Hall, 161 S.W.3d at 151; Howard v. State, 972 S.W.2d 121, 128 (Tex. App.-Austin 1998,
no pet.). 
29. See Hall, 161 S.W.3d at 151; Almanza, 686 S.W.2d at 171. 
30. See Hall, 161 S.W.3d at 156.
31. See id. 
32. See id.