**Ex Parte Paul Rene SERNA.**

**No. 2–96–247–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 19, 1997.

J.R. Molina, Fort Worth, for Appellant.

Tim Curry, Tarrant County Dist. Atty., Betty Marshall, Charles M. Mallin, Debra Ann Windsor, Jeff Cureton, Asst. Crim. Dist. Attys., Fort Worth, for State.

## OPINION ON REHEARING

DAY, Justice.

The State's motion for rehearing en banc is granted. We withdraw our May 8, 1997 opinions and judgment and substitute the following in their place.

### INTRODUCTION

Appellant Paul Rene Serna appeals from the trial court's denial of habeas corpus relief in his driving while intoxicated (DWI) case. Appellant was arrested for DWI, but at the administrative hearing he requested, the administrative law judge rescinded the Department of Public Safety's (DPS's) suspension of Appellant's driver's license. *See* TEX. TRANSP. CODE ANN. §§ 524.012, 524.035 (Vernon 1997). The judge specifically found that the DPS had failed to prove its allegation that Appellant's breath-alcohol concentration was at least 0.10.

Appellant filed his application for writ of habeas corpus, and the trial court granted the writ. After a hearing, however, the trial court denied relief.

In his writ, Appellant contended that the administrative law judge's ruling precluded prosecution on the DWI allegation, based on double jeopardy grounds. He also argued that the State was collaterally estopped from again attempting to prove his breath-alcohol concentration.

Because we find that double jeopardy and collateral estoppel do not apply to this case, we affirm the trial court's denial of habeas relief.

### DOUBLE JEOPARDY

In his first two points, Appellant alleges that a trial on his DWI charge after the State failed to prove that his breath-alcohol concentration was 0.10 or more would violate his federal and state double jeopardy protections. We have previously held that a prosecution for DWI after a driver's license suspension does not violate the double jeopardy provisions of the federal and state constitutions. *See Ex parte Tharp*, 912 S.W.2d 887, 894 (Tex.App.—Fort Worth 1995), *aff'd*, 935 S.W.2d 157 (Tex.Crim.App.1996). Accord-

ingly, we overrule Appellant's first and second points.

## COLLATERAL ESTOPPEL

In his third point, Appellant presents us with a question of first impression for this court. He argues that collateral estoppel should bar the State's prosecution for DWI. We disagree because Appellant has not established his entitlement to habeas relief, because the legislature did not intend a license suspension hearing to have a preclusive effect on a subsequent criminal prosecution for DWI, and because the cases on which Appellant relies are distinguishable from his situation.

### 1. Standard of Review

 At a habeas corpus proceeding, the writ applicant bears the burden of presenting evidence to support his allegation of collateral estoppel. *See Dedrick v. State,* 623 S.W.2d 332, 339 (Tex.Crim.App. [Panel Op.]1981); *Ex parte Ayers,* 921 S.W.2d 438, 440 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *see also Ex parte Kimes,* 872 S.W.2d 700, 703 (Tex.Crim.App.1993) (burden is on writ applicant to prove facts that will entitle him to habeas relief). The trial court's ruling in a habeas corpus proceeding should not be overturned absent a clear abuse of discretion. *See Ayers,* 921 S.W.2d at 440; *see also Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex. Crim.App. 1997) (appellate court should afford almost total deference to trial court's rulings on mixed questions of law and fact if resolution required evaluation of credibility and demeanor). The record in this case shows that Appellant did not carry his burden of establishing his entitlement to habeas relief; thus, the trial court did not abuse its discretion by refusing to grant the requested relief.

### 2. Legislative Intent

 In *Tharp,* we reaffirmed well-settled Texas case law that a license suspension proceeding is civil, administrative, and remedial in nature. *Tharp,* 912 S.W.2d at 891. The legislature's intent in enacting the statute was not to convict or punish the criminal

but rather to protect the public by removing dangerous drivers from the streets. *See id.* Thus, we do not believe the legislature intended the decision made at a license suspension hearing to bar the State from prosecuting a person for DWI. *Cf. Ex parte Pipkin,* 935 S.W.2d 213, 216–17 (Tex.App.—Amarillo 1996, pet. filed) ("[W]e are compelled to conclude that no one [in the legislature] ever expected the decision of the administrative judge in [a license suspension proceeding] to have binding affect upon the determination of appellant's guilt in a criminal prosecution."); *see also State v. Aguilar,* 947 S.W.2d 257, 261 n. 5 (Tex.Crim.App.1997) (indicating that collateral estoppel does not arise from license suspension proceedings for DWI offenses committed on or after September 1, 1995).[1]

### 3. Appellant's Reliance on *Ashe* and *Tarver* is Misplaced

To support his collateral estoppel theory, Appellant relies on the United States Supreme Court's decision in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and the Texas Court of Criminal Appeals' decision in *Ex parte Tarver,* 725 S.W.2d 195 (Tex.Crim.App.1986).

In *Ashe,* the Supreme Court stated, " '[c]ollateral estoppel' . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. But *Ashe* does not imply that a claim of collateral estoppel may be based on anything other than an acquittal in a prior criminal prosecution. The Court stated, "The question . . . is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446, 90 S.Ct. at 1195, 25 L.Ed.2d at 477; *accord Dedrick,* 623 S.W.2d at 336; *Ex parte Lane,* 806 S.W.2d 336, 338 (Tex.App.—Fort Worth 1991, no pet.); *Ex parte Daniel,* 781 S.W.2d 412, 414 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

1. Appellant was arrested for DWI on September 9, 1995.

Appellant's license suspension hearing was a civil, administrative hearing, not a criminal prosecution. *See Pipkin,* 935 S.W.2d at 216–17; *Tharp,* 912 S.W.2d at 891; *Walton v. State,* 831 S.W.2d 488, 490 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Thus, he cannot rely on *Ashe* to support his collateral estoppel claim in this case.

In *Tarver,* however, the Court of Criminal Appeals held the mere fact that a proceeding is "administrative in nature" does not end the inquiry into whether collateral estoppel applies. *Tarver,* 725 S.W.2d at 199. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966) (emphasis in *Tarver* )).

*Tarver* involved a probation revocation hearing, which is administrative in that it deals with the trial court's supervision of probation. In that case, the State moved to revoke Tarver's probation based on an alleged assault, but the trial court denied the motion, finding the State's evidence of the assault "totally incredible." *Tarver,* 725 S.W.2d at 198. Thereafter, the State attempted to prosecute Tarver for the same assault. Tarver filed an application for writ of habeas corpus, alleging that the State was collaterally estopped from relitigating the assault issue. The *Tarver* court agreed. Several factors were important to the *Tarver* court's decision:

- the proceeding to revoke probation required substantially all the same procedures as a criminal trial;
- a district court judge presided over the revocation hearing and acted as finder of fact;
- both the State and the accused were represented by counsel;
- after a full hearing, at which the State put on three witnesses, the trial court

found the State's evidence "totally incredible";

- the State stipulated that it would use the same evidence at the trial for assault as it had at the probation revocation hearing; and
- the trial court's judgment was appealable in the same manner as any other judgment in a criminal trial.

*Id.* at 198–99.

Notably, the *Tarver* court specifically limited its holding to the particular circumstances of that case. The court stated: "We emphasize the narrowness of this holding. . . . It is only in the particular circumstances of this case, where the trial court does make a specific finding of fact that the allegation is 'not true,' that a fact has been established so as to bar relitigation of the same fact." *Id.* at 200.

We question whether the *Tarver* court would have held that collateral estoppel applied but for (1) the trial court's finding at the probation revocation hearing that the State's evidence was "totally incredible" and (2) the State's stipulation at the habeas corpus hearing that it would put on identical "totally incredible" evidence at the criminal trial for assault. *Id.* at 198. These facts presented a compelling reason to find that collateral estoppel applied. We are not presented with any such compelling facts in this case. Indeed, we do not even know the basis for the administrative law judge's finding.

**4. *Tarver* Applies to This Case**

In our original opinion, the majority cited *Ashe, Tarver,* and Judge McCormick's dissent in *Dedrick* for the general proposition that collateral estoppel applies in criminal cases but that an appellate court should conduct a painstaking review of the initial action *only where* the initial action resulted in a general verdict of acquittal. *See* original opinion, at 610–12.[2] Then the original opinion stated that we must apply a more deferential "civil" standard of review in this case—a series of presumptions—because an admin-

---

2. Our original majority opinion is attached as an appendix to the dissenting opinion on rehearing. *Ex parte Serna,* No. 2–96–247–CR. We refer to the original majority opinion throughout as "original opinion, 957 S.W.2d at 606."

istrative license suspension hearing is civil in nature and does not result in an acquittal. *See id.* at 5 & n. 7, ¶ 2. According to the original opinion and the dissenting opinion on rehearing (the dissent), we must presume that the administrative law judge's findings are supported by substantial evidence, and we must apply a presumption of regularity to the license suspension hearing. *See* original opinion, 957 S.W.2d at 621–22; dissent 957 S.W.2d at 609. In other words, the original opinion and the dissent would have us presume that the administrative law judge acted in a judicial capacity and resolved disputed issues of fact that the parties had an adequate opportunity to litigate. *See Tarver,* 725 S.W.2d at 199.

Importantly, however, the initial action in *Tarver* —a probation revocation hearing— applied a civil standard of proof and did not end in a "general verdict of acquittal"; yet instead of relying on presumptions, the *Tarver* court thoroughly examined what occurred at the probation revocation hearing before holding that collateral estoppel applied. *Id.* at 199–200. Accordingly, *Tarver* provides a valid framework for deciding whether collateral estoppel applies in this case.

The original opinion also placed on the State the burden of bringing forth a sufficient record to show that whether Appellant failed a breath-alcohol test was *not* fully and fairly litigated. *See* original opinion, 957 S.W.2d at 621–22. But as a habeas appli-

cant, it was *Appellant's* burden to show that this ultimate fact issue *was* fully and fairly litigated at the license suspension hearing. *See Aguilar,* 947 S.W.2d at 260 (habeas applicant bore burden of demonstrating applicability of collateral estoppel); *Tarver,* 725 S.W.2d at 199 (same).

██ Nonetheless, the original opinion eliminated Appellant's burden on this issue by presuming that the administrative law judge's findings are supported by substantial evidence, i.e., that the underlying factual issues were fully and fairly litigated. *See* original opinion, 957 S.W.2d at 621–22. The substantial evidence presumption does not apply to this appeal. "Substantial evidence" is the standard of review appellate courts apply when a party challenges an administrative agency's fact findings. The party contesting the fact findings bears the burden of rebutting the presumption that those findings are supported by substantial evidence. *See City of El Paso v. Public Util. Comm'n,* 883 S.W.2d 179, 185 (Tex.1994). Substantial evidence is not the proper standard of review in this case because no one has challenged the administrative law judge's fact findings.[3] Indeed, unlike the situation in *City of El Paso* and other civil cases involving administrative agency decisions, the DPS was *statutorily prohibited* from contesting the administrative law judge's fact findings. *See* TEX. TRANSP. CODE ANN. § 524.041(d) (Vernon 1997) (DPS's right to appeal is limited to issues of law).[4]

---

3. The proper standard of review in this case is whether the trial court abused its discretion by denying habeas relief. *See supra* at 600.

4. The original opinion extended *Tarver* by holding that collateral estoppel automatically applies to fact findings in all license suspension hearings, irrespective of the basis for the finding, because those hearings are essentially civil trials. *See* original opinion, 957 S.W.2d at 614. (by amending procedure for license suspension hearings, "the legislature demonstrated and effectuated its intent to place license suspension proceedings in the realm of judicial proceedings"); *id.* at 617 ("[a]n administrative law judge ... is clearly acting in a judicial capacity"); *id.* at 612 (license suspension hearing is civil in nature); *id.* at 621–22 (unambiguous civil judgment is sufficient evidence for applying collateral estoppel and precludes resort to balance of record).

In civil trials to which the State is a party, the State is allowed to appeal both factual and legal

issues. *See, e.g.,* TEX. FAM.CODE ANN. § 109.002 (Vernon 1996) (any party may appeal from trial court's final order affecting parent-child relationship); *In re A.B.B.,* 785 S.W.2d 828, 830–31 (Tex.App.—Amarillo 1990, no writ) (Department of Human Services could appeal from trial court's final order concerning child custody). Accordingly, if a license suspension hearing were a regular civil trial, the State would be allowed to appeal any part of the administrative law judge's decision, just as in any other civil case. As the original opinion pointed out, however, only a person whose driver's license is suspended may appeal the administrative law judge's entire decision. *See* original opinion, 957 S.W.2d at 616, 618; *see also* TEX. TRANSP. CODE ANN. § 524.041(a). The State can only appeal issues of law; it cannot appeal the administrative law judge's fact findings, such as the one made in this case. *See* TEX. TRANSP. CODE ANN. § 524.041(d). This limited appeal right is yet another factor that distinguishes this case from

### 5. *Tarver* is Not Based on a Presumption of Regularity

The original opinion devoted nine pages to the procedures that govern license suspension hearings, original opinion, 957 S.W.2d at 614–17, and then argued that we must apply a presumption of regularity to license suspension hearings "[u]nless the State proves the contrary." *Id.* at 621–22. It is important to note, however, that the *Tarver* decision is not based on a presumption of regularity, but on the Court of Criminal Appeals' examination of what transpired at the probation revocation hearing. Thus, our inquiry is not limited to whether we can presume that the administrative law judge followed proper procedures, but instead focuses on what actually occurred at the license suspension hearing.

The habeas applicant in *Tarver* established his right to habeas relief by providing the Court of Criminal Appeals with a complete record from the probation revocation hearing. In contrast, Appellant has provided us with only a partial transcript from his administrative hearing. *See infra* note 5. He has not provided us with a statement of facts from the hearing. The sparse record presented shows the following:

- Appellant's license suspension hearing was not conducted by a trial court; rather, it was held before an administrative law judge employed by the State Office of Administrative Hearings.
- At the hearing, the DPS apparently presented copies of the arresting officer's statutory warnings and the notice of suspension that was sent to Appellant.[5]
- At the hearing, the administrative law judge found that the DPS did not prove,

by a preponderance of the evidence, that Appellant failed a breath-alcohol test.

The record does not show:

- Whether the DPS was represented by counsel;
- Whether either party put on or cross-examined witnesses;
- Whether either party put on any evidence besides the two documents listed above; or
- The basis of the administrative law judge's determination that Appellant .. had not failed a breath-alcohol test.[6]

Unlike the *Tarver* court, we are unable to examine what actually occurred at the license suspension hearing; we have only the administrative law judge's bare fact finding. *See Pipkin*, 935 S.W.2d at 214 n. 1 (appellant's failure to include transcription of administrative proceeding in appellate record was "hardly conducive" to determination of "whether the procedures utilized during the administrative proceeding afforded the parties a full and fair opportunity to litigate the issues"); *see also Aguilar*, 947 S.W.2d at 260 (evidence insufficient to establish collateral estoppel where, at habeas hearing, applicant did not put on any evidence except administrative judge's ruling). Moreover, unlike the situation in *Tarver*, the administrative law judge in this case did not find the DPS's evidence "totally incredible"; the judge merely found that whatever evidence was presented was insufficient to sustain a finding that Appellant had failed a breath-alcohol test.

---

*Tarver. See Tarver*, 725 S.W.2d at 199 (holding that trial court's decision at revocation hearing was a final judgment because it would have been appealable in the same manner as any other judgment in a criminal case); *see also Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475 (holding that collateral estoppel does not apply absent a valid and final judgment in criminal trial). The State's limited right to appeal is also another indication that the legislature did not intend the administrative law judge's findings to have the preclusive effect of a final judgment in a regular trial.

5. The administrative record from the license suspension hearing indicates the DPS also may have

presented the arresting officer's probable cause affidavit, but that document is not in the record.

6. In his application for writ of habeas corpus, Appellant *judicially admitted* that his breath-alcohol test showed he was intoxicated. Appellant admitted that his breath-alcohol test result showed he "had an alcohol concentration of a level specified in Section 49.01" of the Texas Penal Code, i.e., of 0.10 or more. *See* Tex. Penal Code Ann. § 49.01(2)(B) (Vernon 1994). A person is legally intoxicated if his breath-alcohol concentration is 0.10 or more. *See id.*

### 6. This Case Does Not Pass the *Tarver* Test

The record before us presents few, if any, of the factors essential to the *Tarver* decision concerning collateral estoppel. Thus, the record does not show that the administrative law judge "resolve[d] disputed issues of fact ... which the parties have had an adequate opportunity to litigate" by a valid and final judgment. *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475; *Utah Constr. & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1559–60, 16 L.Ed.2d at 661; *Tarver*, 725 S.W.2d at 199. Consequently, we hold that the State is not collaterally estopped from prosecuting Appellant for driving while intoxicated under either of the theories alleged in the information.

This position has considerable support in Texas case law. Several courts of appeals have refused to hold the State collaterally estopped based on fact findings made in administrative proceedings factually dissimilar from the probation revocation hearing in *Tarver*. These courts have not relied on presumptions of regularity but have examined what actually transpired at the administrative hearings.

For instance, in *State v. Aguilar*, 901 S.W.2d 740 (Tex.App.—San Antonio 1995), *aff'd*, 947 S.W.2d 257 (Tex.Crim.App.1997) a municipal judge, acting as the administrative law judge, entered a finding of no probable cause to arrest Aguilar for driving while intoxicated. In a subsequent DWI proceeding, Aguilar introduced the municipal judge's finding of no probable cause and moved to suppress the evidence resulting from his arrest. *Id.* at 741–42. The San Antonio Court of Appeals held that the municipal judge's finding did not collaterally estop the State from proving, in the DWI proceeding, that probable cause existed to arrest Aguilar. *Id.* at 741. The court stated that an issue is not properly litigated at an administrative hearing unless a trial court acts as fact finder, after a full hearing at which both the State

and the accused are represented by counsel. *Id.* at 741–42 (citing *Tarver*, 725 S.W.2d at 199). Because Aguilar failed to prove that his license suspension hearing included these important factors, he did not establish collateral estoppel. *Id.* at 742.[7] The Court of Criminal Appeals recently affirmed both the decision and the reasoning of the San Antonio court. *See Aguilar*, 947 S.W.2d at 261.

Other courts have reached similar decisions. *See, e.g., Daniel*, 781 S.W.2d at 413–15 (hearing examiner's fact finding, at parole revocation hearing, of insufficient evidence of firearm possession did not collaterally estop State from later proceeding to trial on firearm possession charge, where hearing was not conducted by district court judge; State was not represented by counsel; and hearing officer made determination because subpoenaed witness had failed to appear and testify, not based on the credibility—or lack thereof—of the evidence); *Ex parte Bowen*, 746 S.W.2d 10, 11–13 (Tex.App.—Eastland 1988, pet. ref'd) (hearing examiner's fact finding, at parole revocation hearing, of insufficient evidence of amphetamine possession did not collaterally estop State from later prosecuting defendant for amphetamine possession); *Collins v. State*, 742 S.W.2d 511, 511–12 (Tex. App.—Waco 1987, pet. ref'd) (hearing examiner's fact finding, at parole revocation hearing, of insufficient evidence of burglary did not collaterally estop State from litigating issue of burglary at defendant's subsequent murder trial; hearing examiner's findings were not findings of an ultimate issue of fact determined in a valid and final judgment).

In each of these cases, the defendant had asserted that the State was collaterally estopped from prosecuting based on *Tarver*. Nonetheless, as both the *Daniel* and *Bowen* courts pointed out, the fact issue of whether an appellant actually committed an offense "should be addressed in a court of law, in a criminal proceeding." *Daniel*, 781 S.W.2d at 415; *see Bowen*, 746 S.W.2d at 13; *see also Pipkin*, 935 S.W.2d at 214, 216 (administrative law judge's finding that DPS failed to

---

7. The original opinion inferred that the San Antonio court held the license suspension hearing in that case was not a judicial proceeding because the *State* met its burden of proof. *Compare* original opinion, 957 S.W.2d at 622–23 *with* *Aguilar*, 901 S.W.2d at 742. Nonetheless, the *Aguilar* court made it clear that the burden of proof was on Aguilar, not the State. *Aguilar*, 901 S.W.2d at 742.

prove appellant was "driving or in control of a motor vehicle in a public place" did not collaterally estop State from prosecuting appellant for DWI); *Ex parte Poplin*, 933 S.W.2d 239, 242–43 (Tex.App.—Dallas 1996, pet. ref'd) (same).

In sum, the legislature did not intend that a decision made in a civil, administrative, remedial license suspension hearing could be used to bar the State from prosecuting drunk drivers. Moreover, *Ashe* and *Tarver* are distinguishable from Appellant's situation on numerous grounds, and Appellant has not carried his burden of presenting a record that affirmatively shows his entitlement to habeas relief. Consequently, we hold that the trial court did not abuse its discretion by denying habeas relief on this ground. We overrule point three.

### CONCLUSION

Because neither double jeopardy nor collateral estoppel applies to this case, we affirm the trial court's denial of habeas relief.

DAUPHINOT, J., filed a dissenting opinion.

RICHARDS, J., filed a concurring opinion in which LIVINGSTON, J. joins.

DAUPHINOT, Justice, dissenting on rehearing.

On rehearing, we have three separate opinions. I find the concurring and majority opinions to be confusing.

### *CONCURRING OPINION*

The concurrence argues that Appellant's claim is premature and therefore not properly before this court. Yet this court has never before found the raising of the issue of collateral estoppel pretrial to be premature, and

we have repeatedly issued opinions affirming the denial of pretrial habeas relief.

### *Ripeness for Review*

In the past, double jeopardy was considered an improper pretrial challenge because it could be addressed on appeal. But later, the Court of Criminal Appeals held in *Ex parte Robinson*

[T]here is a Fifth Amendment right not to be exposed to double jeopardy, and that it must be reviewable before that exposure occurs. The appellant has invoked the proper procedure to challenge one of the incidents of such exposure. This court has jurisdiction of the appeal [of denial of pretrial habeas corpus relief]. Therefore, we must consider its merits.[1]

The concurrence states that we should address collateral estoppel pretrial only if "the defendant asserts legal challenges which, if successful, would totally bar prosecution."[2] Appellant in the case before us did argue that the State was fully precluded from prosecuting him for driving while intoxicated (DWI). In other words, the defendant asserted legal challenges which, if successful, would totally bar prosecution.[3] The *Wilhelm*[4] test relied on by the concurrence has been met and we should, under that rule, address Appellant's collateral estoppel arguments. But the concurrence morphs the *Wilhelm* rule into a rule that would limit our pretrial habeas appellate jurisdiction not to legal challenges which, *if successful*, would totally bar prosecution, but to those legal challenges which actually *are successful.* Had Appellant been correct in his claims of full preclusion, the concurring justices would presumably have agreed that Appellant's complaint was ripe. But because our original opinion held that Appellant was partially correct and partially incorrect, the concurring

1. 641 S.W.2d 552, 555 (Tex.Crim.App. [Panel Op.] 1982) (citations omitted); *see Abney v. United States*, 431 U.S. 651, 660–61, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651, 660–61 (1977); *Price v. Georgia*, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300, 303 (1970).

2. *Ex parte Serna*, 957 S.W.2d 598 (Tex.App.—Fort Worth 1997, no pet. h.) (concurring op. on reh'g).

3. The State argued that, even if it could not prosecute him for DWI by reason of a 0.10 breath-alcohol concentration, it could prosecute him for DWI by reason of lack of normal use of his mental and physical faculties. In our original decision, we agreed with the State.

4. *Ex parte Wilhelm*, 901 S.W.2d 956, 957 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

justices believe Appellant is entitled to no pre-trial relief.

In order to apply the concurrence's test, we must first reach the merits of Appellant's legal challenges and determine whether these challenges totally bar prosecution, as Appellant argues. If Appellant is completely wrong or if he is completely right, the complaint is ripe.[5] If he is half right or 99% right, he is entitled to no relief. Or, to put it another way, "Contrariwise . . . if it was so, it might be; and if it were so, it would be; but as it isn't it ain't. That's logic."[6]

I confess, the logic confuses me.

## MAJORITY OPINION

The majority opinion also confuses me. The majority states unequivocally that "the legislature did not intend a license suspension hearing to have a preclusive effect on a subsequent criminal prosecution for DWI. . . ."[7] Yet the majority cites no authority for this pronouncement.[8]

### Question of Statutory Analysis

The majority faults me for my attempt to carefully analyze the new provisions of the Transportation Code and the Government Code. We must make our decision based on the law as it now exists, not as it used to exist or as we would wish it existed. It is not sufficient to say "We've always done it this way," when the legislature has significantly changed the rules. I do not apologize for my attempt to set out the law, but only for the limitations of my intellect which prevent sufficient clarity of expression.

## Legislative Intent

We know the legislature considered the collateral estoppel effect of the DWI license suspension proceedings because it addressed issue preclusion under the DWI license suspension statutes. And, clearly, the legislature did not intend any collateral estoppel effect for a decision in a breath-test refusal, an automatic suspension without hearing, or a suspension when a driver younger than twenty-one has a breath-alcohol concentration of 0.07 or more but less than 0.10. We know this because the legislature stated this in sections 521.298, 524.012, and 724.048(2) of the Transportation Code.[9] But it is equally clear that the legislature anticipated the collateral estoppel effect of a final judgment after a section 524 subchapter D hearing.[10]

A basic rule of statutory construction requires us to look at the plain language of the statute. We presume it says what it means and means what it says.

In interpreting statutes, both the Court of Criminal Appeals and the Supreme Court instruct us to concentrate on the literal text

5. We always address the merits when the Appellant is completely wrong.

6. LEWIS CARROLL, ALICE IN WONDERLAND 139 (Donald J. Gray ed., W.W. Norton & Co.1971) (1896).

7. *Ex parte Serna*, 957 S.W.2d at 600 (Tex.App.— Fort Worth 1997, no pet. h.) (op. on reh'g).

8. In its Motion for Rehearing, the State discusses a hearing in April 1993 in which Allen Place, Chairman of the House Criminal Jurisprudence Committee, inquired of the witness his opinion of both the preclusive effect of and the admissibility of evidence of a prior license suspension judgment on a subsequent criminal trial. The witness stated the evidence would be irrelevant and not admissible. House Criminal Jurisprudence Comm. Tape, Discussion of H.B. 215, Tape No. 2 (April 7, 1993). But as the State admits, it is unclear whether the context of the discussion is a probable cause determination, a breath-test refusal, an automatic suspension, or a suspension after hearing. Chairman Place did say a month later in the House hearing on amendments that his concern was to provide fundamental fairness to a person who has not been convicted. He reiterated the importance of the presumption of innocence until the defendant has had his day in court. House Criminal Jurisprudence Comm. Tape, Discussion of H.B. 215, Tape No. 158 (May 18, 1993).

It is clear that the committee was aware of and did seriously consider the matter of issue preclusion. This fact underscores my conclusion that in providing that three of the four kinds of license suspension proceedings have no collateral estoppel effect, the legislature accomplished what it intended to accomplish.

9. TEX. TRANSP. CODE ANN. §§ 521.298, 524.012, 724.048(2) (Vernon 1997).

10. TEX. TRANSP. CODE ANN. §§ 524.031–.044 (Vernon 1997).

of a statute in order to ascertain its meaning.[11]

Because the statute governing DWI license suspensions includes three of the four kinds of license suspension proceedings in the list of those with no collateral estoppel effect, the doctrine of *inclusio unius est exclusio alterius* compels the conclusion that the fourth kind of proceeding (the full trial) is excluded.

### Effect of Aguilar

The majority also bases its opinion on *State v. Aguilar*,[12] stating broadly that *Aguilar* indicates, in a footnote, "that collateral estoppel does not arise from license suspension proceedings for DWI offenses committed on or after September 1, 1995."[13]

I do not understand how the majority reaches this conclusion. *Aguilar* deals with a breath-test refusal. The case now before us is not a breath-test refusal case. The footnote in *Aguilar* refers to "Texas Traf. Code 524.014."[14] I am unable to locate this statute. The statute actually quoted in the footnote is section 524.012(e) of the Transportation Code. The statute governs automatic license suspension when the driver has a breath-alcohol concentration of 0.10 or higher and does not request a hearing. Read in context, it provides:

(d) A determination under this section is final *unless* a hearing is requested under Section 524.031.

(e) A determination under this section:

(1) is a civil matter;

(2) is independent of and not a bar to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.[15]

A decision made after a section 524.031 hearing is not, therefore, "a determination under this section [524.012(e)]" as section 524.012(d) makes clear.[16]

At issue in *Aguilar* was the preclusive effect of results of a section 724 breath-test hearing. The issue-preclusion provision for the breath-test refusal hearings is section 724.048 of the Transportation Code. But the issue in the case before us is the preclusive effect of specific findings delivered after a defendant properly submitted to a breath test and properly asserted his constitutional and statutory rights to a hearing. *Aguilar* does not apply.

### Collateral Estoppel in Criminal and Civil Cases

The majority seems to assert that collateral estoppel applies to a criminal proceeding only when the first trial is criminal or criminal in nature. Although the majority does not state the basis for this assertion, it may spring from the widespread but mistaken belief that collateral estoppel in a criminal case is exclusively the product of Fifth Amendment Double Jeopardy protections and, therefore, requires prior jeopardy before it may be asserted. That is simply not the law.

Collateral estoppel is a doctrine that has its roots in English common law. It predates the constitutions of the United States and of Texas.[17] Texas courts of appeals, including this court, have on recent occasion referred to "criminal collateral estoppel," but the reference is merely a shorthand reference to the doctrine of collateral estoppel in the context of a criminal case. Although

---

11. *See Stine v. State*, 908 S.W.2d 429, 431 (Tex. Crim.App.1995); *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994).

12. 947 S.W.2d 257 (Tex.Crim.App.1997).

13. *Ex parte Serna*, 957 S.W.2d at 600 (Tex.App.— Fort Worth 1997, no pet. h.) (op. on reh'g).

14. *Aguilar*, 947 S.W.2d at 261, n. 5.

15. TEX. TRANSP. CODE ANN. § 524.012 (Vernon 1997) (emphasis added).

16. *Id.*

17. *See, e.g.*, GEORGE CRABB, A HISTORY OF ENGLISH LAW 421 (Burlington, VT, Chauncey Goodrich 1831); Robert W. Millar, *The Historical Relation of Estoppel by Record to Res Judicata*, 35 ILL. L. REV. 41, 45 (1940).

federal courts use the term, we find no reference to "criminal collateral estoppel" in any opinion from the Texas Court of Criminal Appeals. Nor do we find any reference at all in the opinions of Texas courts to "civil collateral estoppel."

Any attempt to carve out a separate doctrine called "criminal collateral estoppel" is unfounded in Texas law. Collateral estoppel is collateral estoppel, whether it arises in relation to two criminal cases, two civil cases, or a civil case and a criminal case. The elements of collateral estoppel are: (1) identity of parties; (2) the full litigation of an essential issue of fact or law; and (3) a valid and final judgment clearly and necessarily determining that essential fact or law.[18] "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." [19]

There is no barrier to the application of collateral estoppel between civil and criminal cases except that which is inherent in the differences in burdens of proof. A civil judgment may not be used as conclusive proof of a fact in a subsequent criminal prosecution, for example, because of the difference in the degrees of proof required in civil and criminal proceedings.[20] Similarly, a civil judgment requiring proof by preponderance of the evidence may not be used as conclusive proof of a fact in a civil trial requiring proof by clear and convincing evidence.

An ultimate issue is not "necessarily determined" unless it is determined by the degree of proof necessary in the case in which it is an ultimate issue. The barrier to apply collateral estoppel arises from the requirements of collateral estoppel, not from any distinction in the nature of the cases.

In *Ashe v. Swenson*,[21] the United States Supreme Court recognized the constitutional implications of a verdict in a criminal case that necessarily determined as an ultimate issue the same ultimate issue in a second criminal prosecution. It did not, however, hold that double jeopardy is a necessary element of collateral estoppel.

Collateral estoppel requires as its second element the full litigation of the issues of ultimate fact. Full litigation of the issues of ultimate fact may occur without a full trial. For example, the Texas Supreme Court has held that collateral estoppel bars relitigation of issues determined in a prior case, settled on appeal, in which a counterclaim for declaratory judgment was denied.[22] Similarly, a default judgment may be considered as fully litigated and may act to estop future litigation of the precise points that were actually controverted in the former suit.[23]

Full litigation therefore occurs when both parties have the opportunity to participate, regardless of the extent of their actual participation, as long as there is a final judgment determining ultimate issues of fact. A trial judge may make findings of ultimate facts but deny one side the opportunity to litigate fully those facts. Collateral estoppel will not lie in this situation. Similarly, a trial judge may provide both sides the opportunity to litigate fully the issues of ultimate fact, but that judge may for some reason make no determination as to one or more of those facts. Again, collateral estoppel will not lie as to the undetermined issues.[24]

My point is that all three elements of collateral estoppel must be met to trigger the doctrine. However, a party given the opportunity to participate fully in the litigation may not defeat the application of collateral estoppel by simply refusing to participate.

18. *See Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990).

19. RESTATEMENT (SECOND) OF JUDGMENTS § 27, at 255 (1982).

20. *See Busby v. State*, 51 Tex.Crim. 289, 103 S.W. 638, 649 (1907) (op. on reh'g).

21. 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970).

22. *See Eagle Properties, Ltd.*, 807 S.W.2d at 722.

23. *See Cattlemen's Trust Co. v. Blasingame*, 184 S.W. 574, 576 (Tex.Civ.App.—Amarillo 1915, writ ref'd).

24. If the majority's opinion in fact becomes the law of this State, it would be wise for trial courts to submit a separate application paragraph for each theory of driving while intoxicated.

It makes no difference whether the case is civil or criminal. For example, a criminal defendant may refuse to appear in court after entering his plea before the jury. This refusal to participate will not thwart the State's right to rely on the collateral estoppel effect of the criminal conviction in a subsequent community supervision revocation alleging the commission of that same offense.

Collateral estoppel, or issue preclusion, does not require double jeopardy. Rather double jeopardy protections require collateral estoppel. Double jeopardy involves claim preclusion, or res judicata, but res judicata may exist independently of double jeopardy. This fact does not create separate doctrines of civil res judicata and criminal res judicata. Collateral estoppel is issue preclusion. Double jeopardy may on occasion be implicated at the same time as collateral estoppel, or even because of collateral estoppel, but it is not a necessary element—collateral estoppel exists independently of double jeopardy. The fact that collateral estoppel may be triggered in both civil and criminal cases does not create separate doctrines of civil collateral estoppel and criminal collateral estoppel. Just as there is only one doctrine of res judicata, there is only one doctrine of collateral estoppel.

### Presumption of Regularity

The majority would deny administrative license suspensions any presumption of regularity. Instead, the person seeking to rely on the final judgment resulting from a full administrative trial [25] would bear the burden of producing the entire record of the administrative trial. Yet the law is well established that a presumption of regularity applies both to trials and to administrative proceedings.[26]

The Texas Court of Criminal Appeals has stated:

> The presumption of regularity has been described as: "[A] cardinal rule of appellate procedure in this State that [requires the Court to] indulge every presumption in favor of the regularity of the proceedings and documents in the lower Court." [27]

Once the person relying on the prior judgment makes a prima facie showing of finality of the prior judgment, the burden shifts to the person challenging the validity of the judgment.[28]

If the majority is correct in reversing the burden, then before a criminal defendant may be prosecuted as a repeat offender, the State must, at great expense, produce the entire record of the prior proceedings. The trial judge must carefully read these records. The trial judge must then redetermine the validity of the prior convictions.

More directly on point is the prosecution of the offense of driving with license suspended (DWLS).[29] If the majority is correct, the State may never rely on the presumption of regularity of the license suspension. The State must always produce the entire record of the license suspension proceeding in attempting to prosecute DWLS. Yet the Court of Criminal Appeals has repeatedly refused

---

25. I call it a trial because the new Transportation Code and Government Code provisions require the hearing to be conducted as a trial. *See* Tex. Transp. Code Ann. § 524.002 (Vernon 1997); Tex. Gov't Code Ann. § 2001 (Vernon 1997).

26. *See, e.g., Reed v. State*, 811 S.W.2d 582, 587 (Tex.Crim.App.1991) (op. on reh'g) (presumption *of regularity attaches to administration of governmental affairs because falsification of documents constitutes a breach of duty and, usually, a violation of the law); Ex parte Rogers*, 640 S.W.2d 921, 923 (Tex.Crim.App.1982) (presumption of regularity surrounds acts of a grand jury); *Dillehay v. Texas Life Ins. Co.*, 130 Tex. 197, 107 S.W.2d 369, 370 (1937) (presumption that the department of insurance did its duty and had ascertained that the policy in question complied with the requirements of law); *Lohmuller v.*

*State*, 921 S.W.2d 457, 462 (Tex.App.—Waco 1996, pet. ref'd) (justice court judgment entitled to presumption of regularity); *Turner v. State*, 860 S.W.2d 147, 150 (Tex.App.—Austin 1993) (presumption of regularity of license suspension proceeding when defendant attacked suspension in DWLS trial), *rev'd on other grounds*, 897 S.W.2d 786 (Tex.Crim.App.1995).

27. *Stacy v. State*, 819 S.W.2d 860, 863 (Tex.Crim. App.1991) (quoting *McCloud v. State*, 527 S.W.2d 885, 887 (Tex.Crim.App.1975)).

28. *See Lewis v. State*, 501 S.W.2d 88, 90 (Tex. Crim.App.1973).

29. *See* Tex. Transp. Code Ann. § 521.457 (Vernon 1997).

to place this unnecessary burden on the State. In *Fernandez v. State*,[30] the Court of Criminal Appeals specifically held that "the state is not required to go behind the proceedings suspending said license and prove the regularity of said proceedings."

Unless we would have one law for the defendant and a separate law for the State, we are bound by the historic presumption of regularity of license suspension proceedings. No amount of wishing will change the reality.

## CONCLUSION

I would reverse the judgment of the trial court denying habeas corpus relief for the reasons set out above and in the original opinion in this case, which I attach as an appendix. For all these reasons, I respectfully dissent to the majority and concurring opinions.

## APPENDIX

FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant Paul Rene Serna appeals from the trial court's denial of habeas corpus relief in his driving-while-intoxicated (DWI) case. Appellant was arrested for DWI, but at the administrative hearing he requested, the administrative law judge denied the State's request to suspend Appellant's license. The judge specifically found that the State had failed to prove its allegation that Appellant's breath-alcohol concentration was at least 0.10.

Appellant filed his application for writ of habeas corpus, and the trial judge granted the writ. Upon hearing, however, the trial judge denied relief.

In his writ, Appellant contended that the administrative law judge's ruling precluded prosecution on the DWI allegation, based on double jeopardy grounds. He also argued that the State was collaterally estopped from

again attempting to prove his breath-alcohol concentration. We agree with Appellant that the State is precluded from relitigating the issue of Appellant's breath-alcohol concentration.

The State argued that double jeopardy and collateral estoppel do not apply. Alternatively, the State argued that even if it could not offer proof of Appellant's breath-alcohol concentration, Appellant could still be prosecuted for DWI because the State was still free to prove that, as a result of the introduction of alcohol into his system, Appellant did not have the normal use of his mental and physical faculties. That is, Appellant urges case preclusion, and the State urges issue preclusion. We find that the State's position has merit; we therefore reverse the trial court's ruling in part and affirm it in part.

## DOUBLE JEOPARDY

In his first two points of error, Appellant alleges that a trial on his DWI charge after the State failed to prove that his breath-alcohol concentration was 0.10 or more would violate his federal and state double jeopardy protections. We have previously held that a prosecution for DWI after a driver's license suspension does not violate the double jeopardy provisions of the federal and state constitutions.[1] Accordingly, we overrule Appellant's first and second points of error and affirm the trial court's denial of habeas relief as to the double jeopardy claim.

## ISSUE PRECLUSION

In his third point of error, Appellant presents us with a question of first impression for this court. He argues that collateral estoppel should bar the State's relitigation of the issue of DWI. The State argues that it is not barred from again attempting to prove that Appellant's breath-alcohol concentration was at least 0.10 after having failed to do so at the administrative hearing. The State contends that collateral estoppel will not lie because (1) the State can still prosecute Appellant for DWI by reason of his not having the normal use of his mental and physical

---

**30.** 382 S.W.2d 935, 937 (Tex.Crim.App.1964).

**1.** *See Ex parte Tharp*, 912 S.W.2d 887, 894 (Tex. App.—Fort Worth 1995), *aff'd*, 935 S.W.2d 157 (Tex.Crim.App.1996).

faculties because of the introduction of alcohol into his system, (2) Appellant's breath-test failure was not fully litigated, and (3) section 524.012(e) of the Texas Transportation Code "explicitly provides [according to the State] that ·collateral estoppel will not arise from the findings of an administrative judge."

We hold that the State is precluded from relitigating the issue of Appellant's breath-alcohol concentration, but we agree that the State can still prosecute Appellant under the "normal use" definition of intoxication. We therefore sustain this point of error in part and overrule it in part.

The United States Supreme Court has set out the test for collateral estoppel, known now as issue preclusion, as it applies to criminal cases.[2] It has held that collateral estoppel means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[3] The Texas Court of Criminal Appeals, applying the standard set out in *Ashe*, distinguished double jeopardy and collateral estoppel:

> To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime.[4]

In his dissent to the majority in *Dedrick*, Judge McCormick discussed the difficulty in deciding whether the issue of ultimate fact

was determined adversely to the State when the defendant contends the State is collaterally estopped from relitigating that issue based on a jury's general verdict in a criminal case.[5] He pointed out that the *Ashe* court stated that

> [w]here a previous judgment of acquittal was based upon a general verdict, ... this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.[6]

If Appellant were relying on a prior, general verdict of acquittal in asserting his collateral estoppel claim, then both the trial court below and this court would have correctly adopted the approach Judge McCormick discussed. But he is not. Instead, Appellant relies on a specific finding by an administrative law judge in a driver's license suspension hearing, which is a civil proceeding. Therefore, civil standards apply.[7]

### Test for Issue Preclusion

The doctrine of collateral estoppel or issue preclusion is well-developed in civil law. Is-

---

2. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970).

3. *Id.*

4. *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex. Crim.App.1986) (quoting *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Crim.App. [Panel Op.] 1981)).

5. *See Dedrick*, 623 S.W.2d at 337 (McCormick, J., dissenting).

6. *Id.* (citation omitted) (quoting *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76).

7. *But see Ex parte Pipkin*, 935 S.W.2d 213 (Tex. App.—Amarillo 1996, pet. filed) (using *Ashe* lan-

guage to totally circumscribe collateral estoppel within double jeopardy protections and therefore hold that it is inapplicable to license suspension hearings, which are civil). We believe an analysis that does not account for the widespread use of issue preclusion between purely civil actions, where double jeopardy is not an issue, is inappropriate given the hybrid nature of this case.

We further note that the only meaningful distinction between the standard applied when the initial action is civil and the standard applied when the initial action is criminal is the amount of deference accorded the judgment in the initial action when the criminal judgment is based on a general verdict.

sue preclusion "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues."[8] Issue preclusion prohibits the relitigation of facts determined in a prior action.[9] A party asserting the defense of issue preclusion must establish that

(1) the facts sought to be litigated were fully and fairly litigated in the prior action;

(2) those facts were essential to the judgment in the first action; and

(3) the parties were adversaries in the first action.[10]

Issue preclusion applies to administrative findings when the agency is "[a]cting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."[11] For an agency's findings to have preclusive effect, that agency must have jurisdiction over the contested issue.[12] An agency's decision on a fact issue binds the trial court,[13] and an agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence.[14]

Thus, a party seeking to establish issue preclusion from an administrative finding must also prove that

(4) the decision-maker was acting in a judicial capacity;

(5) the issues of fact were properly before the decision-maker; and

(6) both parties had an adequate opportunity to litigate.[15]

### Analysis

### 1. Full and Fair Litigation

### 6. Adequate Opportunity to Litigate

The State argues that the facts were not fully litigated. The State has not brought forward a statement of facts to show any reason why the clear finding and judgment of the administrative law judge is subject to challenge. In advancing its position, the State instead relies on *Mower v. Boyer*.[16] But the issue in *Mower* is not whether a final finding in a civil proceeding estops a party from proving the same ultimate issue in a criminal proceeding. Instead, *Mower* deals with the preclusive effect of a district court's *interlocutory* partial summary judgment. The Texas Supreme Court held that the partial summary judgment was not entitled to collateral estoppel effect.[17] The court pointed out that "[a] prior adjudication of an issue will be given estoppel effect only if it was adequately deliberated and firm."[18] *Mower*, then, focuses on the first prong of the test

---

**8.** *Sysco Food Svcs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994) (citing *Lytle v. Household Mfg. Inc.*, 494 U.S. 545, 553, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504, 516 (1990)); *see Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980); *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979).

**9.** *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex.1992); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) (op. on reh'g); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 830 (Tex.App.—Dallas 1994, writ denied).

**10.** *See Bonniwell*, 663 S.W.2d at 818.

**11.** *Bryant v. L.H. Moore Canning Co.*, 509 S.W.2d 432, 434 (Tex.Civ.App.—Corpus Christi), *cert. denied, Pope v. Texas*, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 74 (1974) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642, 661 (1966)); *Muckelroy*, 884 S.W.2d at 830. *But see*

*Champlin Exploration, Inc. v. Railroad Comm'n*, 627 S.W.2d 250, 253 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

**12.** *See Muckelroy*, 884 S.W.2d at 830; *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 680 (Tex. 1982).

**13.** *See Muckelroy*, 884 S.W.2d at 831; *Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 249 (Tex. App.—Houston [14th Dist.] 1986, no writ).

**14.** *See City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex.1994).

**15.** We note that the first prong and sixth prong overlap; if one is met, so is the other.

**16.** 811 S.W.2d 560 (Tex.1991).

**17.** *See id.* at 562.

**18.** *Id.*

for issue preclusion, which is whether the facts were fully litigated. In deciding this issue, a court should consider "(1) whether the parties were fully heard, (2) [whether] the court supported its decision with a [sound,] reasoned opinion, and (3) [whether] the decision was subject to appeal or was in fact reviewed on appeal." [19]

Unlike *Mower*, the claim before us does not involve a partial summary judgment. It involves a final determination by an administrative law judge. The order of the administrative law judge was signed November 17, 1995. The order shows that both sides appeared and announced ready. Additionally, it shows that the administrative law judge specifically found that the State failed to prove Appellant's breath-alcohol concentration by a preponderance of the evidence. The State did not appeal. The statute provides, "The decision of the administrative law judge is final when issued and signed." [20]

Based on the unchallenged record, it is clear that, in the administrative hearing, both parties had an adequate opportunity to litigate the facts regarding the breath-alcohol concentration, and those facts were fairly and fully litigated.

Allowing the State to relitigate facts already specifically determined against it by an administrative law judge would waste the judicial and financial resources of our state, results the doctrine of issue preclusion was designed to prevent. We find that Appellant has satisfied both the first and sixth prongs.

### 2. Breath–Alcohol Concentration: An Essential Fact

In the DWI proceeding, the ultimate fact issues are the elements of the offense. A person is guilty of the offense of DWI if that person operates a motor vehicle in a public place while intoxicated (1) by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body or (2) by having an alcohol concentration of at least 0.10. [21]

A person's driver's license is suspended by an administrative law judge when the judge finds that the person had an alcohol concentration of at least 0.10 while operating a motor vehicle in a public place and that reasonable suspicion to stop or probable cause to arrest the person existed. [22]

The result of an intoxilyzer test, then, is evidence of a fact essential to the judgment at the license suspension hearing. It may be evidence that the defendant did have an alcohol concentration of at least 0.10 or did not have an alcohol concentration of at least 0.10. In either event, it is essential to the judgment. Therefore, Appellant has satisfied the second prong.

### 3. Adversaries in the First Action

In the first action, Appellant was opposed by the Department of Public Safety of the State of Texas pursuant to the mandate of the Texas legislature through Chapter 524 of the Texas Transportation Code. [23] According to the Texas Administrative Code, a party to an administrative proceeding may represent itself or "be represented by an attorney authorized to practice law in the State of Texas or other representative when authorized by law." [24] In the second action, Appellant was also opposed to the State, as represented by the Tarrant County District Attorney's Office. [25]

---

19. *Id.*

20. Tex.Transp.Code Ann. § 524.035(e) (Vernon Pamph. 1997).

21. *See* Tex. Penal Code Ann. § 49.01(2) (Vernon 1994).

22. *See* Tex.Transp.Code Ann. § 524.035; Tex. Penal Code Ann. § 49.01(2)(B).

23. *See* Tex.Transp.Code Ann. § 1.004 (Vernon Pamph. 1997) ("In this code, 'Department of

Public Safety' means the Department of Public Safety of the State of Texas").

24. 1 Tex.Admin.Code § 155.21 (West 1996).

25. *See* Tex. Gov't Code Ann. § 44.320(a) (Vernon 1988) ("The criminal district attorney of Tarrant County shall attend each term and session of the criminal district courts of Tarrant County and each term and session of the County Court of Tarrant County held for the transaction of criminal business and *shall represent the state* in all matters before those courts.") [Emphasis added.]

Thus the State of Texas sought to suspend Appellant's driver's license and to prosecute him for the DWI. At the writ hearing, the State was represented by the Tarrant County District Attorney's Office, but the District Attorney's Office was not a party to the action. It is an uncontested fact that in both cases, the State of Texas was Appellant's opposing party. Appellant has satisfied the third prong.

### 4. Judicial Capacity

The procedure for administrative license suspension hearings was substantially changed by the 73rd Legislature. The 74th Legislature made additional changes. Unlike the provisions in effect before January 1, 1995, the date the 73rd Legislature's changes became operative, current chapter 524 of the Transportation Code mandates additional safeguards to protect the rights of both parties in the administrative license suspension hearing. Thus, the legislature demonstrated and effectuated its intent to place license suspension proceedings in the realm of judicial proceedings.

Section 524.002 makes chapter 2001 of the Government Code applicable to a chapter 524 proceeding. The State Office of Administrative Hearings may adopt a rule that conflicts with chapter 2001 if a conflict is necessary to expedite the hearings process within the time required by chapter 524 and applicable federal guidelines.[26] The purposes of chapter 2001 of the Government Code are to provide minimum standards of uniform practice and procedure for state agencies and to restate the law of judicial review of state agency action.[27]

Chapter 2001 lays out the general rights and procedures of parties in contested cases. Each party is entitled to an opportunity for a hearing after reasonable notice of not less than 10 days and to respond and present evidence and argument of each issue involved in the case.[28] Section 2001.052 provides:

(a) Notice of a hearing in a contested case must include:

(1) a statement of the time, place, and nature of the hearing;

(2) a statement of the legal authority and jurisdiction under which the hearing is to be held;

(3) a reference to the particular sections of the statutes and rules involved; and

(4) a short, plain statement of the matters asserted.

(b) .... On timely written application, a more definite and detailed statement must be furnished not less than three days before the hearing.[29]

Each party to a contested case has a right to an attorney. Either party may expressly waive this right.[30] Section 2001.054(c) provides:

A revocation, suspension, annulment, or withdrawal of a license is not effective unless, before the beginning of state agency proceedings:

(1) the agency gives notice by personal service or registered or certified mail to the license holder of facts or conduct alleged to warrant the intended action; and

(2) the license holder is given an opportunity to show compliance with all the requirements of law for the retention of the license.[31]

The notice requirements in chapter 524 differ slightly from the general notice requirements. Under chapter 524 of the Transportation Code, if a person is arrested for driving while intoxicated and the intoxilyzer shows that his or her alcohol concentration was at least 0.10, the arresting officer shall personally serve the arrestee with notice of suspension, or, if the intoxilyzer results arrive after the arrestee is released, admitted to bail, or put in jail, the officer

26. *See* Tex.Transp.Code Ann. § 524.002(c).

27. *See* Tex Gov't Code Ann. § 2001.001 (Vernon Pamph. 1997).

28. *See id.* § 2001.051.

29. *Id.* § 2001.052.

30. *See id.* § 2001.053.

31. *Id.* § 2001.054.

shall attempt to personally serve the arrestee.[32] The officer also must send a report to the department by the fifth business day after the arrest.[33] Even if the officer fails to personally serve the arrestee with notice of suspension, the department may rely on the report in determining whether to suspend the license.[34]

If the department suspends a person's driver's license, it shall send notice to the person by certified mail at the address listed in the department's records, or in the arresting officer's records, if they list a different address.[35] Notice is presumed received on the fifth day after it is mailed.[36] This notice must state:

(1) the reason and statutory grounds for the suspension;

(2) the effective date of the suspension;

(3) the right of the person to a hearing;

(4) how to request a hearing; and

(5) the period in which the person must request a hearing.[37]

If the party whose license is suspended does not request a hearing, the suspension is effective on the fortieth day after the arresting officer served the arrestee with notice or on the fortieth day after the person is presumed to have received notice from the department.[38] On the other hand, if the department receives a request for a hearing in writing, including facsimile, or in another manner that the department allows, within fifteen days after the arresting officer actually served the arrestee or within fifteen days after the arrestee is presumed to have received notice from the department, then a hearing shall be held as provided by subchapter D of chapter 524.[39] This hearing may not occur before the eleventh day after the person requesting it gets notice of the hearing, unless both sides waive this rule.[40] It must occur, though, before the effective date of the suspension.[41] While this notice may be given by telephone or other electronic media, written notice must also be sent.[42] This written notice is deemed received on the fifth day after it is mailed.[43]

In a contested case, interpreters must be provided for deaf and hearing-impaired parties and witnesses.[44] While a contested case may be disposed of informally, if either side timely requests a formal hearing, it must be granted.[45] Similarly, a person who timely requests a formal hearing to contest a license suspension is entitled to it.[46]

Section 2001.058 prohibits a state agency from attempting to influence the finding of facts or the administrative law judge's application of the law in any contested case, except by proper evidence and legal argument.[47] Upon the written request of either party to a contested case, a proceeding, or any part of a proceeding, the record of the proceeding must be transcribed.[48]

The record in a contested case includes:

(1) each pleading, motion, and intermediate ruling;

(2) evidence received or considered;

(3) a statement of matters officially noticed;

(4) questions and offers of proof, objections, and rulings on them;

---

32. *See* Tex.Transp.Code Ann. § 524.011(a)(1).

33. *See id.* § 524.011(a)(2).

34. *See id.* § 524.012(a).

35. *See id.* § 524.013(a).

36. *See id.* § 524.013(b).

37. *Id.* § 524.014.

38. *See id.* § 524.021(a).

39. *See id.* § 524.031.

40. *See id.* § 524.032(a).

41. *See id.*

42. *See id.* § 524.040(a).

43. *See id.* § 524.040(b).

44. *See* Tex. Gov't Code Ann. § 2001.055.

45. *See id.* § 2001.051.

46. *See* Tex.Transp.Code Ann. § 524.031.

47. *See* Tex. Gov't Code Ann. § 2001.058.

48. *See id.* § 2001.059.

(5) proposed findings and exceptions;

(6) each decision, opinion, or report by the officer presiding at the hearing; and

(7) all staff memoranda or data submitted to or considered by the hearing officer or members of the agency who are involved in making the decision.[49]

In contested cases, the rules of evidence as applied in a civil bench trial in a district court of this state apply, "except that evidence inadmissible under those rules may be admitted if the evidence is: (1) necessary to ascertain facts not reasonably susceptible to proof under those rules; (2) not precluded by statute; and (3) of a type on which a reasonably prudent person commonly relies in the conduct of the person's affairs."[50] In a contested case, irrelevant, immaterial, or unduly repetitious evidence is excluded.[51] The rules of privilege apply in contested cases.[52] Objections to evidence offered in a contested case may be made and shall be on the record.[53] In contested cases both parties have the right to conduct cross-examination of witnesses when required for a full and true disclosure of the facts.[54] Witnesses are sworn and their testimony is taken under oath.[55] Witnesses may also be subpoenaed and their attendance required. Books, records, papers, or other objects may also be subpoenaed.[56] The rules also provide for discovery, orders for production or inspection, judicial notice, discovery of identity of witnesses or potential witnesses and expert reports, discovery of previous statements of a witness who is not a party, and depositions.[57]

A decision or order that may become final under section 2001.144 of the Government Code and that is adverse to a party in a contested case must be in writing or stated in the record. It must include findings of fact and conclusions of law, stated separately. The findings of fact must be based only on the evidence and on matters that are officially noticed. Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings.[58] A party in a contested case must be notified either personally or by first class mail of any decision or order.[59]

No motion for rehearing is required, and the administrative law judge's final decision is immediately appealable.[60] To appeal, "[a] petition ... must be filed in a county court at law in the county in which the person was arrested, or, if there is not a county court at law in th[at] county, in the county court. If the county judge is not a licensed attorney, the county judge shall transfer the case to a district court for the county on the motion of either party or the judge."[61] Review of the appeal is on the record certified by the State Office of Administrative Hearings without additional testimony.[62] The State may appeal issues of law only.[63] On appeal, either party may apply to the court to present additional evidence.[64] To get a transcript of the administrative hearing, the party appealing the administrative law judge's ruling must request it from the State Office of Administrative Hearings. A fee must be paid for the transcript.[65]

49. *Id.* § 2001.060.

50. *Id.* § 2001.081.

51. *See id.* § 2001.082.

52. *See id.* § 2001.083.

53. *See id.* § 2001.084.

54. *See id.* § 2001.087.

55. *See id.* § 2001.088.

56. *See id.* § 2001.089.

57. *See id.* §§ 2001.090–102.

58. *See id.* § 2001.141.

59. *See id.* § 2001.142.

60. *See* Tex.Transp.Code Ann. § 524.041(a).

61. *See id.* § 524.041(b).

62. *See id.* § 524.043.

63. *See id.* § 524.041(d).

64. *See id.* § 524.043(b).

65. *See id.* § 524.044.

Section 524.035 lists the specific issues that must be proved at a license suspension hearing and establishes the burden of proof as by a preponderance of the evidence:

> (a) The issues ... are whether:
>
> (1) the person had an alcohol concentration of a level specified by Section 49.01(2)(B) [of the] Penal Code [0.10 or more] while operating a motor vehicle in a public place; and
>
> (2) reasonable suspicion to stop or probable cause to arrest the person existed.
>
> (b) If the administrative law judge finds in the affirmative on each issue, ... the suspension is sustained.
>
> (c) If the administrative law judge does not find in the affirmative on each issue ... the department shall:
>
> (1) reinstate the person's driver's license; and
>
> (2) rescind an order prohibiting the issuance of a driver's license to the person.[66]

An administrative law judge may not make an affirmative finding on the issue of alcohol concentration if the breath or blood analysis showed that the person had an alcohol concentration below the level specified by section 49.01 of the Penal Code at the time the specimen was taken. The administrative law judge's decision is final when issued and signed.[67]

The administrative law judge must be licensed to practice law in Texas and must meet other requirements set by the chief administrative law judge.[68] An administrative law judge who follows the procedures mandated by the Government and Transportation Codes in presiding over a license suspension hearing is clearly acting in a judicial capacity. Appellant has satisfied the fourth prong.

### 5. Issues Properly Before the Administrative Law Judge

The Transportation Code mandates that an administrative law judge preside over a driver's license suspension hearing.[69] One of the issues to be determined at the hearing is whether the defendant's breath-alcohol concentration is at or above 0.10.[70] Thus, the issue of Appellant's breath-alcohol concentration was properly before the administrative law judge. Appellant has satisfied the fifth prong.

Appellant has satisfied the requirements for applying issue preclusion generally and for applying it to an administrative finding.[71] The trial court abused its discretion by not granting relief on this point. The State is therefore collaterally estopped from relitigating the issue of Appellant's breath-alcohol concentration. Appellant's third point of error is overruled in part and sustained in part.

### The State's Arguments

The State, however, claims the findings of the administrative judge should not be given preclusive effect because (1) "the finding could have been made on a technical evidentiary basis unrelated to the merits of the factual determination," and (2) "the Department of Public Safety has limited power to seek review of the findings."

The State misconstrues the *Mower* factor involving the necessity of the decision's being subject to appeal or in fact reviewed on appeal.[72] Taken in context, it is clear that the three factors relied on by the State are factors to consider in determining whether the decision on a specific issue was adequately deliberated and firm. That is, these fac-

---

66. *Id.* § 524.035.

67. *See id.*

68. *See* Tex. Gov't Code Ann. § 2003.041(b).

69. *See* Tex.Transp.Code Ann. § 524.033(a).

70. *See id.* § 524.035(a)(1); Tex. Penal Code Ann. § 49.01(2)(B).

71. We note that if the finding had been adverse to Appellant, he likewise would have been collaterally estopped from relitigating it in a civil proceeding in which the State opposed him or in a community supervision revocation hearing.

72. *See Mower*, 811 S.W.2d at 562.

tors are to be used in determining whether the decision is final or subject to change.

In the context of its discussion of the finality of a decision rendered in an interlocutory partial summary judgment, the Texas Supreme Court in *Mower* was making the point that one way to decide whether the judgment is final is to determine whether it is interlocutory, and therefore not appealable, or whether it is a final decision.[73] If the State's interpretation of the third factor in determining the finality of a judgment were taken to its logical conclusion, no decision in a criminal case could ever serve as res judicata or be entitled to preclusive effect because the State can never appeal a final determination of the trial of a criminal case, whether the case is tried to the court or to a jury. In discussing whether the judgment was appealable, the Texas Supreme Court was not addressing the issue of whether one party could or could not appeal; it was addressing the determination of finality.

Even if the State were correct in its interpretation of this factor, its conclusion would be incorrect. The Transportation Code provides that a person whose driver's license suspension is sustained may appeal the decision by filing a petition not later than the thirtieth day after the date the administrative law judge's decision is final.[74] The State has the right to appeal issues of law.[75] The argument that the administrative law judge's decision could have been made on "a technical evidentiary basis unrelated to the merits of the factual determination" is unpersuasive in light of the fact that the State has the right to appeal such issues of law.

The State also argues that findings from license suspension hearings should not be given preclusive effect because the purpose and design of the proceedings are different. The State provides no authority to directly support this position, and we do not find it persuasive.

The Court of Criminal Appeals has pointed out that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."[76]

Additionally, in *Tharp*, we recognized that a driver's license is not a right, but a privilege.[77] As we noted in that case, though, "[O]nce a driver's license is issued, proper constitutional safeguards must be followed before revoking that license."[78] We implicitly found in *Tharp* that the same administrative procedure now complained of by the State adequately protects the defendant's constitutional due process rights. Implicitly we found that the parties have an adequate opportunity to litigate the issues. To hold that for purposes of issue preclusion the administrative hearing is fundamentally unreliable would be inherently contradictory. We do not reject our position in *Tharp*.[79]

The State also argues that the legislature has specifically provided that collateral estoppel will not arise from an administrative license suspension hearing. The State would be correct if Appellant had not requested a hearing:

(e) A determination under this section [§ 524.012]:

(1) is a civil matter;

(2) is independent of and not a bar to any matter in issue in an adjudication of a criminal charge arising from the occur-

---

73. *See id.*

74. *See* TEX.TRANSP.CODE ANN. § 524.041(a).

75. *See id.* § 524.041(d).

76. *Tarver*, 725 S.W.2d at 199 (quoting *Utah Constr. & Mining Co.*, 384 U.S. at 421–22, 86 S.Ct. at 1559–60, 16 L.Ed.2d at 661).

77. *See Tharp*, 912 S.W.2d at 890.

78. *Id.* at 890.

79. Furthermore, the legislative history of the statute reveals that Senator Zaffirini, a cosponsor of the bill in the Senate, said that the legislature "bent over backwards to specify procedures to ensure that due process is honored every step of the way." Debate on Tex. S.B. 1 on the floor of the Senate, 73rd Leg., R.S. (April 21, 1993) (introductory statement of Senator Zaffirini, cosponsor of Administrative License Revocation Bill) (tapes available from Senate Staff Services Office).

rence that is the basis for the suspension; and

> (3) does not preclude litigation of the same or similar facts in a criminal prosecution.[80]

Providing that a decision made by the DPS, as opposed to an independent, detached administrative law judge, would not preclude criminal prosecution was proper, because few, if any, of the prongs for applying issue preclusion would be met in such a case. But that is not the case before us.

The State would also be correct in asserting that issue preclusion does not apply if Appellant had been under 21 years of age at the time of the incident.[81] The Transportation Code provides that

> (a) The director may suspend the driver's license of a person under 21 years of age who:
>
>> (1) is arrested or taken into custody for an offense under Section 49.04, 49.07, 49.08, Penal Code; and
>>
>> (2) submits to the taking of a specimen of breath or blood the analysis of which shows that the person had an alcohol concentration of 0.07 or more but less than 0.10.
>
> . . . .
>
> (d) A suspension under Subsection (a):
>
>> (1) is a civil matter;
>>
>> (2) is independent of and not a bar as to any matter at issue in an adjudication of a criminal charge or a proceeding under Chapter 51, Family Code, that arises from the occurrence that is the basis for the suspension; and
>>
>> (3) does not preclude litigation of the same or similar facts in a criminal prosecution or a proceeding under Chapter 51, Family Code.[82]

Here, too, the DPS makes the decision to suspend the license, not an administrative

law judge. In fact, a defendant in this situation would not be entitled to a hearing unless it pertained to whether or not he or she completed an education program,[83] which is neither an essential fact for the suspension nor an issue of ultimate fact for a DWI. Thus, here, too, the Texas Legislature properly provided that the Department's decision would have no preclusive effect. But Appellant was not under 21 years of age at the time of the incident.

Finally, the State would also be correct in asserting that the administrative law judge's findings should not have preclusive effect if Appellant had refused the breath-alcohol concentration or blood-alcohol concentration test. Chapter 724, Subchapter C of The Transportation Code, governing suspensions or denials of licenses based on refusals to provide blood or breath specimens, provides:

> The issues at a hearing under this subchapter are whether:
>
>> (1) reasonable suspicion or probable cause existed to stop or arrest the person;
>>
>> (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated;
>>
>> (3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and
>>
>> (4) the person refused to submit to the taking of a specimen on request of the officer.[84]

None of these issues is an issue of ultimate fact in a DWI prosecution. Also, in this scenario, there is no breath or blood test on which to make a finding. It is therefore not surprising that the Legislature provided that, in this scenario,

> (a) The determination of the department or administrative law judge:
>
>> (1) is a civil matter;
>>
>> (2) is independent of and is not an estoppel as to any matter in issue in an

**80.** Tex.Transp.Code Ann. § 524.012(e).

**81.** Appellant was 21 at the time of the incident.

**82.** Tex.Transp.Code Ann. § 521.298 (Vernon Pamph. 1997).

**83.** *See id.* §§ 521.301, 521.344(g), (h). A defendant could appeal the suspension to a county

court at law or county court and request a jury trial. *See id.* § 521.302. A factual finding at that level would certainly have collateral estoppel effect in a case unrelated to license suspensions, and the legislature properly did not carve out an exception for license suspensions.

**84.** *Id.* § 724.042 (Vernon Pamph. 1997).

adjudication of a criminal charge arising from the occurrence that is the basis for the suspension or denial; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.[85]

But in the case before us, Appellant did submit to a breath test. And for those in Appellant's situation, persons of legal drinking age who submit to a breath or blood test, allegedly fail it, and timely request a hearing, the legislature has specifically and purposely chosen to provide by implication that issue preclusion will arise from the decision of an administrative law judge following the hearing.[86] As the three inapposite provisions make clear, had the legislature wanted to prohibit issue preclusion for persons in Appellant's situation, it easily could have.

The State mistakenly relies on a provision of the Transportation Code that does not apply to the case before us. The State contends:

Section 524.012(e) provides as follows:

The determination of the department or administrative law judge:

(1) is a civil matter;

(2) is independent of and is not an estoppel as to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension or denial; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.

The State apparently mistakenly quotes from section 724.048(a), which governs hearings in which the defendant refused to take a breath or blood test.[87] Section 524.012 actually reads:

§ 524.012. Department's Determination for Driver's License Suspension

(a) On receipt of a report under Section 524.011, if the officer did not serve a notice of suspension of driver's license at the time the results of the analysis of a breath or blood specimen were obtained, the department shall determine from the information in the report whether to suspend the person's driver's license.

(b) The department shall suspend the person's driver's license if the department determines that the person had an alcohol concentration of a level specified by Section 49.01(2)(B), Penal Code, while operating a motor vehicle in a public place.

(c) The department may not suspend a person's driver's license if the analysis of the person's breath or blood specimen determined that the person had an alcohol concentration of a level below that specified by Section 49.01(2)(B), Penal Code, at the time the specimen was taken.

(d) A determination under this section is final unless a hearing is requested under Section 524.031.

(e) A determination *under this section:*

(1) is a civil matter;

(2) is independent of and not a bar to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.[88]

Section 524.012 does not address a proceeding before an administrative law judge. It addresses only a determination by the department to suspend a person's driver's license based on the person's breath or blood-alcohol concentration, and it specifically limits the application of this section to those determinations made by the department without a hearing before the administrative law judge.[89] We do not find section 524.012(e) applicable to this case.

---

85. *Id.* § 724.048(a); *see also Ex parte McFall,* 939 S.W.2d 799, 801 (Tex.App.—Fort Worth 1997, no pet.) (administrative law judge's findings at a license suspension hearing arising from failure to take a breath test do not bar subsequent DWI prosecution).

86. *See* TEX.TRANSP.CODE ANN. § 524.035.

87. *See id.* § 724.048(a).

88. *Id.* § 524.012 (emphasis added).

89. *See id.* § 524.012(d).

### RESPONSE TO DISSENT

Our esteemed colleague's dissent argues that the State's "limited appeal right is yet another factor that distinguishes this case from *Tarver*." [90] The dissent points out parenthetically that the trial court's decision at the revocation hearing was a final judgment because it would have been appealable in the same manner as any other judgment in a criminal case.[91] The dissent would also hold that "a claim of collateral estoppel may [not] be based on anything other than an acquittal in a prior *criminal* prosecution." [92] The dissent forgets that "[a] probation revocation proceeding is neither a criminal nor a civil trial, but rather an administrative hearing," [93] and that the State has no right to appeal denial of a motion to revoke.

We would point out that the State's right to appeal a license revocation judgment is greater than the State's right to appeal an adverse final judgment in a criminal case. If, as the dissent would have it, the scope of appeal is the only measure of the finality of a judgment, there would never be a final judgment in a criminal case. The State cannot appeal the final verdict, although the defendant may appeal. On the other hand, the State has the right to an interlocutory appeal of the grant of a motion to suppress evidence or of a motion to quash indictment; the defendant does not. Thus, the scope of appeal cannot determine the finality of a judgment.

Additionally, issue preclusion may be based on a decision in a civil proceeding.[94] The dissent suggests that the judgment from the administrative hearing was not sufficient evidence for issue preclusion despite the *specific* finding that the State failed to prove

that Appellant's breath-alcohol concentration was at least 0.10. The dissent, treating the license suspension hearing as a criminal trial resulting in a general verdict, would require the entire record from the previous trial, including all exhibits, before a litigant could raise issue preclusion. The dissent would force the litigants to relitigate the issue previously tried and would force both the trial court below and this court to second-guess the judge at the first trial. Yet it is well established law that the unambiguous civil judgment alone is sufficient evidence for applying issue preclusion, and the judgment precludes resort to the balance of the record.[95] The dissent also complains that

[t]he record does not show:
- Whether the DPS was represented by counsel;
- What procedure the administrative law judge followed at the hearing;
- Whether either party put on or cross-examined witnesses;
- Whether either party put on any evidence besides the two documents listed above [sic];
- The basis of the administrative law judge's determination that Appellant had not failed a breath alcohol test.

An agency's decision on a fact issue binds the trial court,[96] and an agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence.[97] Unless the State proves the contrary, it is presumed that the administrative law judge complied with the statutory rules of procedure and evidence; that is, it is presumed:
- that both parties had the opportunity to be represented by counsel;

---

90. Op. at —— (Day, J., dissenting).

91. *See id.*

92. *Id.* at —— (emphasis added).

93. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.Crim. App.1993); *see Montoya v. State*, 832 S.W.2d 138, 142 (Tex.App.—Fort Worth 1992, no pet.).

94. *See Tarver*, 725 S.W.2d at 200 n. 3; *see also Malone v. State*, 864 S.W.2d 156, 160 (Tex.App.—

Fort Worth 1993, no pet.) (our court necessarily recognized that collateral estoppel based on a civil proceeding can be applied to a criminal case).

95. *See Permian Oil Co. v. Smith*, 129 Tex. 413, 73 S.W.2d 490, 498–500 (1934).

96. *See Muckelroy*, 884 S.W.2d at 831; *see also Vaughn*, 705 S.W.2d at 249.

97. *City of El Paso*, 883 S.W.2d at 185.

- that the administrative law judge followed the evidentiary rules for a civil bench trial;
- that both parties had the opportunity to call and to cross-examine witnesses;
- and that the evidence was sufficient to support the administrative law judge's findings and judgment.

The dissent would require that both parties be represented by attorneys before allowing litigation to have preclusive effect. Would the dissent really have this court hold that a party may avoid the effects of issue preclusion by simply proceeding *pro se?*

In its analysis, the dissent relies on one license suspension case and three parole revocation cases, none of which is on point. *State v. Aguilar*[98] involves the following determination by a municipal judge:

> 'The State of Texas acknowledged that no probable cause for arrest was presented in this administrative proceeding, and the court finds that there was no probable cause alleged for the arrest of defendant.'[99]

The San Antonio Court of Appeals held that the finding did not preclude the State from proving probable cause to arrest in the DWI proceeding because the State presented sufficient evidence through the testimony of the hearing officer to show that the administrative hearing was not a judicial proceeding.[100] Additionally, the hearing officer's finding of fact did not purport to resolve the issue of probable cause, but merely recited that probable cause was not alleged in the pleadings.[101]

Six years earlier, in *Neaves v. State*,[102] the Court of Criminal Appeals held "that whether probable cause to believe appellant had been driving while intoxicated existed at the time police requested a breath or blood specimen from him" was not an issue of ultimate fact for collateral estoppel analysis.[103] We later followed *Neaves* in announcing the same rule.[104]

Recently, however, the Court of Criminal Appeals announced that the DWI statute and the administrative license suspension statute "define the same offense for double jeopardy purposes."[105] Judge Mansfield also noted in the decision that

> the State will be generally required, as part of a prosecution for driving while intoxicated, to demonstrate there was reasonable suspicion or probable cause to stop or arrest the person.[106]

Whether the *Voisinet* decision impacts issue preclusion is not an issue before us because probable cause is not an issue before us. We do not have an *Aguilar* situation.

Besides the fact that it involved a different legal issue than the case before us, *Aguilar* also involved different controlling law—the *Aguilar* hearing was held under the old article 6687b rules. The Court of Criminal Appeals has stated:

> In enacting an amendment the Legislature is presumed to have changed the law, and a construction should be adopted that gives effect to the intended change, rather than one that renders the amendment useless.[107]

Reliance on caselaw following the old law is therefore misplaced.

Additionally, in *Aguilar* the State proved:

1. the hearing officer was not a lawyer;
2. the hearing was informal and consisted only of reviewing the documents filed by DPS;

---

98. 901 S.W.2d 740 (Tex.App.—San Antonio 1995, pet. granted).

99. *Id.* at 741 (quoting the record).

100. *See id.* at 742.

101. *See id.*

102. 767 S.W.2d 784 (Tex.Crim.App.1989).

103. *See id.* at 785.

104. *See Ex parte Vasquez,* 918 S.W.2d 73, 75 (Tex.App.—Fort Worth 1996, pet. ref'd).

105. *Voisinet v. State,* 935 S.W.2d 424, 425 (Tex. Crim.App.1996).

106. *Id.* at 425 n. 1.

107. *Ex parte Trahan,* 591 S.W.2d 837, 842 (Tex. Crim.App.1979); *see also* TEX. GOV'T CODE ANN §§ 311.021, 311.023 (Vernon 1988).

3. the State was not represented by counsel;
4. neither side presented witnesses;
5. the municipal judge customarily ruled against DPS when the charging officer failed to allege probable cause;
6. the charging officer failed to allege probable cause;
7. DPS customarily did not appeal adverse rulings; and
8. the ruling was not appealed.[108]

We have no such evidence before us. Thus, *Aguilar* involved different facts, different legal issues, and different law.

The remaining cases relied on by the dissent all deal with parole revocation hearings.[109] That fact alone is enough to distinguish them from the case at bar.

Unlike the administrative law judge, the parole hearing examiner does not try a case to a final judgment. Also unlike the administrative law judge, the hearing examiner is not a lawyer.[110] He or she merely considers allegations and makes recommendations to the board of pardons and paroles.[111] Finally, in revoking parole, there is no actual trial but merely an informal hearing. For all of these reasons, as well as others apparent from the discussion of the provisions of the Transportation and Government Codes earlier in this opinion, a parole revocation hearing is in no way comparable to a post-January 1, 1995 license suspension hearing.

The author of the dissent begins his opinion by stating that he "do[es] not believe the legislature intended a license suspension hearing to have a preclusive effect on a subsequent criminal prosecution for DWI."[112] As the Court of Criminal Appeals has stated,

A primary tenet of statutory construction is the importance of legislative intent. . . . Such intent may be derived from the language of the statute, its legislative history and the context of the entire law in which it is written.[113]

Similarly,

When attempting to discern this collective legislative intent or purpose, we necessarily focus our intention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We do this because the text of the statute is the law in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. Yet a third reason for focus[ ]ing on the literal text is that the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted.[114]

If a statute is clear and unambiguous, it is not the court's place to add or subtract language or meaning.[115]

---

**108.** *See Aguilar*, 901 S.W.2d at 742.

**109.** *See Ex parte Daniel*, 781 S.W.2d 412, 414 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Ex parte Bowen*, 746 S.W.2d 10, 11–13 (Tex. App.—Eastland 1988, pet. ref'd); *Collins v. State*, 742 S.W.2d 511, 511–12 (Tex.App.—Waco 1987, pet. ref'd).

**110.** *See Collins*, 742 S.W.2d at 512.

**111.** *See* Tex.Code Crim.Proc.Ann. art. 42.18, § 14(a) (Vernon Supp.1997).

**112.** Op. at ―― (Day, J., dissenting).

**113.** *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim.App.1992) (citations omitted).

**114.** *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

**115.** *See State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim.App.1996); *Boykin*, 818 S.W.2d at 785; *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim.App.1991); *see also Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981)) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose").

We believe that the fact that the original bill went through three legislative sessions before being passed by both houses, that its cosponsor herself admitted that the drafters had "bent over backwards" to protect the due process rights of a defendant, and that the statute clearly states that issue preclusion is not applicable where the defendant is too young to drink legally, where the defendant refuses a breath or blood test, and where the defendant does not request a hearing all point to the majority's conclusion—the legislature did not intend to deny issue preclusion in cases where defendants of legal drinking age allegedly fail a breath test, timely request a hearing, and receive a favorable judgment coupled with specific findings at the hearing.

## SUMMARY

Regarding Appellant's double jeopardy claims, we hold that a prosecution for DWI after a license suspension hearing does not violate the double jeopardy protections of the State and Federal constitutions. The trial court's denial of relief as to these claims is affirmed.

Regarding Appellant's collateral estoppel claim, Appellant's alcohol concentration was a fact essential to the judgment of the administrative law judge. It is also an essential element of a DWI by having an alcohol concentration of at least 0.10. The State and Appellant were cast as adversaries in the administrative law hearing, both parties had an adequate opportunity to litigate the issue of alcohol concentration, the judgment of the administrative law judge was not interlocutory but was final, and the decision was entered November 17, 1995. There is no indication that either side sought to appeal, and the thirty-day period for the notice of appeal to be filed had passed by May 13, 1996, the date of the hearing on Appellant's application for writ of habeas corpus. We therefore hold that the State is precluded from attempting to prove Appellant operated a motor vehicle in a public place while intoxicated by having a breath-alcohol concentration of at least 0.10, and the trial court abused its discretion by not so holding. To

that extent, we grant the relief requested by Appellant.

But we also hold that the State is not precluded from attempting to prove Appellant operated a motor vehicle in a public place while he was intoxicated by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body. That issue was not litigated in the administrative hearing. That portion of the trial court's order is affirmed.

The order of the trial court is accordingly affirmed in part and reversed in part. We remand this case to the trial court for proceedings consistent with this opinion.

DAY, J., filed a dissenting opinion.
May 8, 1997.

RICHARDS, Justice, concurring on rehearing.

On reflection, I now believe appellant's collateral estoppel complaint is premature.

A court should not grant habeas corpus relief when there is an adequate remedy by appeal. *See Ex parte Hopkins*, 610 S.W.2d 479, 480 (Tex.Crim.App.1980); *Ex parte Wilhelm*, 901 S.W.2d 956, 957 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, writ dism'd w.o.j.). Exceptions to this rule are reserved to cases where the defendant asserts legal challenges which, if successful, would totally bar prosecution. *See Ex parte Wilhelm*, 901 S.W.2d at 957. In our case, the only claims asserted by appellant that would totally bar prosecution are the double jeopardy claims rejected in both the majority and dissenting opinions. The collateral estoppel complaint asserted by appellant, if sustained, would not bar prosecution because the State can proceed under the loss of faculties theory. Therefore I concur only in the result.

LIVINGSTON, J., joins in this opinion.